**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DR. ROGER RAMSAMMY,

                        Plaintiff,

        -against-

HUDSON VALLEY COMMUNITY COLLEGE,
BOARD OF TRUSTEES OF HUDSON VALLEY
COMMUNITY COLLEGE, and
NEIL J. KELLEHER, Chair of the Board of Trustees
of Hudson Valley Community College, in his individual
and official capacities,

                        Defendants.

---

1:25-cv-1328 (AMN/PJE)

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

---

Plaintiff, Dr. Roger Ramsammy, by and through his attorneys, Capezza Hill, LLP, hereby alleges as his Complaint the following:

## PRELIMINARY STATEMENT

1.    Plaintiff Dr. Roger A. Ramsammy (hereinafter "Plaintiff" or "Dr. Ramsammy"), is the former President of Hudson Valley Community College ("HVCC" or "the College"), holding that position through a contract of employment entered into between Plaintiff and HVCC starting on or about July 1, 2018.

2.    Plaintiff performed his duties in an exemplary fashion, guiding HVCC through an extraordinary period of accomplishment and expansion, turning around over ten consecutive years of enrollment decline and reaching fundraising levels not previously seen at HVCC or by any SUNY President.  However, in June 2024, the HVCC Board of Trustees voted to terminate Plaintiff's employment based upon alleged and unspecified acts of "dishonesty" and "failure to

1

adhere to procedures and directives" of the College.  HVCC provided no details of the allegations against Plaintiff upon which the termination was based, but instead made general unsupported allegations. Pursuant to his employment contract, Plaintiff was to be afforded adequate notice describing the reasons for his termination, and a hearing before the HVCC Board of Trustees prior to his termination.  Plaintiff was provided neither.  Moreover, Plaintiff had no ability to provide evidence to the Board of Trustees to contradict accusations that were not provided or otherwise presented to him.

3.      Further, in May, June, and July 2024, HVCC and its agents, including Defendant Neil J. Kelleher, President of the HVCC Board of Trustees, made disparaging public comments by stating, falsely, that Plaintiff was terminated for cause because he engaged in "inappropriate behavior." These and other such statements by HVCC and its agents were of the type that were intended to, and in fact did, injure Plaintiff in his trade and profession.

4.      As set forth herein, Defendants blatantly violated Plaintiff's contractual and constitutional rights to due process and equal protection, credited the false accusations of his white and female accusers on the bases of race and sex, and defamed Dr. Ramsammy through its untrue and injurious statements to the public.

## PARTIES

5.      Plaintiff is a citizen of the State of Florida, residing in Delray Beach, Palm Beach County, in the State of Florida..

6.      Plaintiff at times relevant to this action was the President of HVCC located at 80 Vandenburgh Avenue, Troy, New York 12180.

7.      As such, at all relevant times to this action, Plaintiff was employed by HVCC as its President until his wrongful termination in June 2024.

8. At all relevant times to this action, Plaintiff's gender identity was male.

9. At all relevant times to this action, Plaintiff was a Black person of African, Latino, and Indian descent and ethnicity.

10. HVCC, with a principal place of business in Troy, New York, is a public institution of higher education organized under the laws of New York, sponsored by the County of Rensselaer, New York, and is part of the State University of New York system. It is a department of the County of Rensselaer.

11. At all relevant times to this action, HVCC was the employer of Dr. Ramsammy.

12. Defendant HVCC Board of Trustees is the governing body responsible for employment decisions at HVCC.

13. Upon information and belief, Defendant HVCC Board of Trustees is composed entirely of individuals domiciled in the State of New York.

14. Defendant Neil Kelleher is the Chair of the HVCC Board of Trustees and is sued in both his official capacity as Chair and his individual capacity.

15. Upon information and belief, Mr. Kelleher is a citizen of the State of New York and resides in Rensselaer County.

**JURISDICTION AND VENUE**

16. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his rights under the United States Constitution in connection with his termination.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity exists between Plaintiff and all Defendants. Indeed, as set forth herein and in the attached

**Exhibit A**, Plaintiff's contractual damages alone are over two million dollars.

18.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims as those claims form part of the same case or controversy under Article III of the United States Constitution.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of New York.

20.     A Notice of Claim pursuant to the New York State General Municipal Law § 50 *et seq.* was filed with and served on Rensselaer County and HVCC on November 25, 2024, which is within ninety (90) days after the claims arose and after the injuries and damages were sustained.

21.     HVCC conducted an examination of Plaintiff pursuant to Section 50-h of the General Municipal Law on February 7, 2025.

22.     More than thirty (30) days have elapsed since the presentation of the Notice of Claim and the claims presented in the Notice of Claim remain unpaid and unadjusted.

## FACTUAL ALLEGATIONS

**1.     Plaintiff's Employment and Employment Contract**

23.     At all times relevant herein, Plaintiff was the President of HVCC, a position he began on or about July 1, 2018.

24.     Plaintiff and HVCC entered into a written employment contract that was extended a number of times and that continued until Defendants unlawfully terminated Plaintiff via correspondence dated June 26, 2024, which became effective August 26, 2024.

25.     Under the initial agreement, the parties agreed, among other things, that HVCC would employ Plaintiff as President of HVCC from July 1, 2018 through September 30, 2023.

Plaintiff agreed to accept such employment beginning July 1, 2018, and ending September 30, 2023. HVCC agreed to pay to Plaintiff each year during the term of the initial agreement and any continuation of the contract, a specific total annual compensation for services to be rendered during each year.

26.     The initial contractual term for Plaintiff's employment was extended to run from September 1, 2021 through August 30, 2026.

27.     On March 30, 2024, HVCC again extended the employment contract for Plaintiff based on his exemplary performance as President of HVCC.

28.     Plaintiff's contract was renewed and extended on March 30, 2024 for another five-year term, to last through August 30, 2029. The most recent employment contract, titled "Hudson Valley Community College Troy, New York Fourth Amended and Restated Employment Agreement," (hereinafter "Contract" or "Employment Contract") is attached hereto as **Exhibit A**.

29.     From the time the Plaintiff was hired until his subsequent unlawful termination, he guided the College through an extraordinary period of accomplishment and expansion, turning around over ten consecutive years of enrollment decline.

30.     Plaintiff also reached fundraising levels not previously seen at HVCC or by any SUNY President.

31.     During Plaintiff's tenure, he encountered difficult but predictable negotiation conflicts with the Labor Union representing HVCC employees.

32.     During the course of these conflicts, Plaintiff kept the Chair and Members of the HVCC Board of Trustees updated and informed of the nature of the disputes, and at all times acted in accordance with the directions from the HVCC Board of Trustees.

33.     Staff and representatives of the Labor Union began to publicly attack Plaintiff,

making multiple false accusations against Plaintiff which he endured without substantial support from the HVCC leadership, including the Chair of the Board of Trustees, Neil J. Kelleher.

34.    During Plaintiff's tenure, he fulfilled all duties and obligations under the contracts and maintained a record of satisfactory performance.

35.    HVCC terminated Plaintiff's employment without proper prior notice, and without adherence to the agreed-upon procedures and protections provided in Plaintiff's employment contract.

36.    Plaintiff did not receive the due process protections required under the contract or federal or state constitutional law, such as proper notice of allegations, a meaningful opportunity to respond, and a fair hearing before the HVCC Board of Trustees prior to his termination.

37.    Plaintiff's termination was accompanied by the circulation of false and defamatory statements to the public by HVCC and its agents, including Defendant Kelleher, resulting in stigma and reputational harm.

38.    Plaintiff's discharge was motivated, in whole or in part, by Plaintiff's race, national origin, ethnicity, and gender.

**2.    Plaintiff is Falsely Accused**

39.    In April 2024, Plaintiff and multiple HVCC staff members, all in their official roles, attended two conferences in Louisville, Kentucky.

40.    Plaintiff's wife also attended the conferences in her personal capacity. Dr. Ramsammy has been married to his wife, Annette Ramsammy, for twenty-seven (27) years. Dr. Ramsammy is in a committed, partnered, loving relationship with his spouse.

41.    Plaintiff's Employment Contract and the budget for the conferences had been modified prior to the conferences so as to allow Plaintiff's wife to attend conferences and other

HVCC events, paid for by the College. This change was made because Plaintiff's wife was a significant representative of the Plaintiff and HVCC in the social settings and meetings at conferences and other events.

42.     The trip to the conferences in Louisville, Kentucky was initially to be attended by Dr. Ramsammy and his wife and several senior staff, but not his recently hired Executive Assistant who would later make false allegations against Dr. Ramsammy (hereinafter "Complainant").

43.     When Complainant asked Dr. Ramsammy about the possibility of attending, Dr. Ramsammy did not believe it was necessary because all scheduling was to be in advance and, to dissuade her rather than be direct, Dr. Ramsammy said that the hosting hotel, the Omni Hotel in Louisville, Kentucky ("the Omni Hotel"), was booked, and that the hotel is normally booked as soon as the conference registration period opens. Dr. Ramsammy followed up by saying "maybe the next one."

44.     Two days later, Complainant came back to Dr. Ramsammy and said that she had made calls herself and that there was space at the Omni Hotel and asked if she could go ahead and book a flight and hotel.   In response, Dr. Ramsammy said to Complainant that he was attending two conferences on the trip, the first being the Higher Education Research and Development Institute ("HERDI") conference, and the second being the Advancing America's Community Colleges ("AACC") conference.

45.     The HERDI conference went from Wednesday through Friday, and the AACC conference started Friday and lasted through the following Tuesday.  Dr. Ramsammy said that Complainant could attend the AACC conference only, which would have her in Louisville starting Friday and returning to the Albany area on Tuesday.

46.     When Dr. Ramsammy next heard back from Complainant, she had booked herself

to leave on the same flight with Dr. Ramsammy and his wife and to return on the same day, which meant that she would be there for both the HERDI and AACC conferences. However, Complainant never registered to attend the AACC conference, which Dr. Ramsammy only found out when he and Complainant went to register on Saturday morning.

47.     Dr. Ramsammy and his wife arrived at Albany Airport on Tuesday and ran into Complainant at the airport. All three checked in at the same time, and Dr. Ramsammy and his wife, alone, then walked around the Albany Airport waiting for the flight to be called. During the walk, Dr. Ramsammy and his wife had something to eat alone, and during the second leg of the journey they had lunch with Complainant at the layover airport.

48.     From Wednesday through Thursday of the HERDI conference, Dr. Ramsammy was either at a conference or with his wife and Complainant.

49.     Dr. Ramsammy, his wife, and Complainant all ate dinner together in Louisville on Tuesday, Wednesday, Thursday, Friday and Saturday nights.

50.     That Saturday, when Dr. Ramsammy and Complainant went to the Convention Center to register for the AACC conference so he could attend the day's presentations, Dr. Ramsammy learned that Complainant had not registered him to attend any of the events, and she herself was not registered at all.

51.     After general registration, Dr. Ramsammy and Complainant were walking back to the hotel because they could not attend any events when Complainant asked if Dr. Ramsammy was upset about not being booked for AACC events. Dr. Ramsammy replied "yes", and asked rhetorically as to how was he going to attend his faculty's presentation given he had not been signed up in advance by Complainant?  Complainant said it was the fault of Dr. Ramsammy's former administrative assistant, Ms. Kalkbrenner.

52.     As the walk continued, Complainant began asking over and over if Dr. Ramsammy was displeased with her performance and then repeated, "I really don't want to go back to Dental." Dental was the HVCC unit where Complainant had previously worked at the College. Dr. Ramsammy replied "that was not my plan."

53.     When they returned to the Omni Hotel, Dr. Ramsammy met up with his wife for a walk with Complainant. Later that evening, Dr. Ramsammy and his wife joined Complainant for dinner with the entire HVCC team.

54.     Upon information and belief, upon return from the Kentucky trip, Complainant was in contact with the Vice President for Academic Affairs at HVCC, Judy DiLorenzo, hereinafter referred to as "the VP for Academic Affairs."

55.     The VP for Academic Affairs, to whom Plaintiff had previously provided a poor evaluation and who had herself made plans to file a complaint against Plaintiff for age discrimination, is a White female.

56.     Upon information and belief, the VP for Academic Affairs and Complainant collectively determined that Complainant should make a report of misconduct against Plaintiff, which Complainant eventually did.

57.     Unknown to Plaintiff at the time, upon returning from the Kentucky conferences, Complainant met with Deborah J. Richy, HVCC Director of Human Resources on Monday, April 8, 2024, and falsely told Ms. Richy that Dr. Ramsammy had sexual harassed and assaulted Complainant at the Kentucky conferences.

58.     Upon information belief, and unknown to the Plaintiff at the time, on April 18, 2024, Complainant filed a HVCC sexual harassment complaint against Plaintiff by sending it to Ms. Richy, Donal Christian, HVCC Vice President for Administration and Chief Financial Officer,

and Scott J. Ely, HVCC Associate General Counsel.

59.    Thereafter, Plaintiff was orally informed by other senior staff members at HVCC that Complainant had made a report of sexual harassment against him, but he was not told the exact allegations or provided a copy of any written report.

60.    At the time, Plaintiff had never seen any written complaint against him by any person, including Complainant.

61.    Upon information and belief, the VP of Academic Affairs then began to circulate information about the allegations that the Complainant had made with Board of Trustees members and with members of the Faculty Union so as to undermine Plaintiff's leadership at HVCC.

62.    Upon information and belief, the VP of Academic Affairs then filed her own claim alleging age discrimination against Plaintiff, which allegation is also false.

63.    Plaintiff's ability to lead was undermined as individuals associated with HVCC released to the media portions of the allegations, requiring Plaintiff to deny the allegations publicly in order to preserve his reputation.

64.    The complaints provided ammunition to the Union to then publicly undermine Plaintiff's reputation and continued to spread false information about Plaintiff.

65.    Believing that his ability to lead was being tarnished by the false allegations, Plaintiff requested and was granted paid leave during the course of an investigation into the false allegations.

66.    HVCC engaged the services of Nancy V. Wright, Esq., to conduct an investigation into Complainant's allegations against Dr. Ramsammy.

67.    On May 7, 2024, Dr. Ramsammy's former counsel, Kevin Luibrand, Esq., sent Ms. Wright a letter indicating that Dr. Ramsammy was not fully aware of the allegations made against

him, but he would fully cooperate in the investigation, and denying any inappropriate conduct or behavior.

68.     On May 15, 2024, the Albany News 10 television station ran a story indicating: "The Chairman of Hudson Valley Community College's board of trustees says the college's Human Resources department received an employee complaint against college president Roger Ramsammy. NEWS10 is working to confirm the nature of that complaint. College Board of Trustee members met on Wednesday in which they voted to place Ramsammy on paid administrative leave and appoint Louis Coplin II as Interim President."

69.     The May 15, 2024 Albany News 10 a story also indicated: "While the school conducts its investigation, HVCC's Faculty Association urged the Board of Trustees '…to immediately place Dr. Ramsammy on leave from his official duties at the College in order to facilitate an impartial investigation free from interference and any appearance of impropriety…' said Robert Whitaker, President of the Hudson Valley Community College Faculty Association."

70.     On May 15, 2024, the Albany Spectrum News ran a story indicating: "The president of the Hudson Valley Community College was placed on administrative leave Wednesday while an independent investigation is conducted into an employee's allegation of misconduct, according to the college's Board of Trustees.  The board met in executive session Wednesday afternoon and launched the investigation after the college's human resources office received a complaint about President Roger Ramsammy, according to HVCC Board chair Neil Kelleher.  After the meeting, Kelleher said Ramsammy was placed on administrative leave, and Louis Coplin, who recently retired as vice president of student affairs, will act as college leader pending resolution of the matter.  'It is important for members of our community to know that the college takes any report of misconduct very seriously,' Kelleher said. 'We have clearly established policies and procedures

for handling a claim or allegation in a fair and expeditious manner, which we are following.'"

71.    On May 16, 2024, Complainant, through legal counsel, filed a Notice of Claim indicating an intent to bring claims for damages against Dr. Ramsammy and HVCC based upon Dr. Ramsammy's alleged sexual assault at the Omni Hotel on April 4, 2024, and for Dr. Ramsammy's alleged retaliation upon learning that Complainant had filed a complaint of sexual assault and harassment.

72.    On May 17, 2024, Dr. Ramsammy and his wife were interviewed by Ms. Wright during which they discussed, *inter alia*, the innocuous circumstances surrounding hiring Complainant for the executive assistant position, and the April 2024 conferences in Louisville, Kentucky.

73.    During the interview, Dr. Ramsammy denied that he kissed Complainant, held her hand, or stated obscene things to her.

74.    Dr. Ramsammy explained the very few times during the Louisville conferences that he and Complaint were alone together.

75.    During the interview, Ms. Wright inquired about arrangements during Dr. Ramsammy's business travels, including when HVCC staff also attended and Dr. Ramsammy maintained the arrangements were professional.

76.    Ms. Wright also inquired about the nature of the interactions with and between various HVCC staff, including the VP of Academic Affairs and a woman who accused Dr. Ramsammy of making a pass at her, and Dr. Ramsammy maintained that his interactions with these individuals were professional in nature.

77.    On May 21, 2024, Mr. Luibrand wrote to Ms. Wright indicating that he had authored a letter to the legal counsel for the Omni Hotel authorizing it to release to Ms. Wright the

video/digital recordings at the Omni Hotel for April 2, 2024 until April 6, 2024.  Mr. Luibrand also enclosed an Uber receipt showing that on April 4, 2024, Dr. Ramsammy left the Museum Hotel at 3:45 p.m. and arrived at the Omni Hotel at 3:55 p.m.

78.    Also on May 21, 2024, Dr. Ramsammy through Mr. Luibrand authorized the Omni Hotel to release to Mr. Luibrand and to Ms. Wright video footage recordings of the period from April 2, 2024 through April 7, 2024.

79.    On May 22, 2024, Mr. Luibrand wrote a follow-up letter to Ms. Wright that was emailed on the same date. This letter indicates, *inter alia*, that while Dr. Ramsammy had not yet seen a written complaint submitted to the College by Complainant, he understood, based on what he was told, that Complainant had two general allegations against Dr. Ramsammy: (1) that he had kissed Complainant unwanted in an elevator at the Omni Hotel, and (2) that he had used or was planning to use his office for illicit conduct.  Mr. Luibrand indicated that Dr. Ramsammy had addressed those allegations in several manners during the interview with Ms. Wright, and encouraged Ms. Wright's contact with a number of people identified in Mr. Luibrand's communications to Ms. Wright on May 7, 2024.

80.    Mr. Luibrand indicated that he followed up on May 22, 2024, because they had the recordings from the Omni Hotel relative to Complainant's central allegations at the Omni Hotel which demonstrated, together with the Uber receipts and statements made to Ms. Wright in the interview process, that the allegations from April 4, 2024, were provably false.

81.    The Omni Hotel videos clearly demonstrated that at the time Complainant alleges that Dr. Ramsammy grabbed her hand and abruptly kissed her while they walked through the Omni Hotel towards the elevators on April 4, 2024, Dr. Ramsammy was seen carrying a pad of paper in one hand and a water bottle in the other, and that he made no contact with Complainant in the

manner alleged.

82.    The video also clearly indicates that as Complaintaint and Dr. Ramsammy got into the elevator at that time, another individual entered the elevator with Complaintaint and Dr. Ramsammy.

83.    Complainant's sworn account about conduct on April 4, 2024, in her Notice of Claim was contradicted in total by the Omni Hotel videos.

84.    Further, regarding Complainant's second allegation (which was not alleged by Complainant in her Notice of Claim), Dr. Ramsammy had already provided information that he previously had the locks changed to his office so that Complainant could not continue to access and walk into his office unannounced and without knocking, and that he informed facility staff members not to allow a change back so that he could ensure that Complainant did not have unfettered access to his office.

85.    These steps to change the locks to Dr. Ramsammy's office were taken some time prior to the Kentucky trip, thus confirming Dr. Ramsammy's assertion that he was uncomfortable by Complainant's behavior and sought to keep professional boundaries with Complainant.

86.    Once the Omni Hotel video recordings were obtained, Plaintiff was able to specifically show that each of Complainant's allegations from the April 2024 conferences in Kentucky were false, that Plaintiff never sexually assaulted anyone, never tried to or did kiss Complainant, and never tried to or did grab Complainant's hand.

87.    Plaintiff provided notification to HVCC that the Complainant's statements were verifiably false and requested that HVCC publicly acknowledge Complainant's false statements.

88.    On June 14, 2024, Dr. Ramsammy had another interview with Ms. Wright, during which Dr. Ramsammy addressed circumstance surrounding Complainant's allegations and

allegations by another female HVCC employee alleging that Dr. Ramsammy had sexually harassed her by making a pass at her.

89.    Dr. Ramsammy was not aware of the claim by this second individual, but the allegations were false and Dr. Ramsammy denied any inappropriate conduct or wrongdoing toward her.

90.    On June 18, 2024, Complainant submitted, with the aid of legal counsel, an Amended Notice of Claim against Dr. Ramsammy and HVCC, essentially asserting the same allegations of sexual assault and harassment as contained in the original Notice of Claim but adding that in addition to the allegations against Dr. Ramsammy on April 4, 2024 at the Omni Hotel, she contends that "[l]ater that week, while still on their work trip, Respondent Ramsammy kissed Claimant a second time."

91.    Beyond Claimant's Notice of Claim and Amended Notice of Claim that contain false accusations, Plaintiff has been provided no notice or disclosure of specific factual allegations regarding any other claim against him by Complainant or anyone else.

**3.    Plaintiff's Termination**

92.    On June 25, 2024, the HVCC Board of Trustees publicly voted to terminate Dr. Ramsammy during a scheduled meeting.

93.    The meeting minutes from the June 25, 2024 HVCC Board of Trustees meeting indicate, *inter alia*, that after an executive session to discuss a personnel issue was ended, Defendant Kelleher moved "for the President's termination for Just Cause under section 4.1(d) and (e) of the President's contract, with the Chairman to issue the appropriate termination notice as drafted by Special Council for the Board of Trustees, with all appropriate provisions to be contained therein."   The motion was seconded by Trustee Judith Braselor, and carried

unanimously.

94.    On or about June 25, 2024, Defendant Kelleher placed a message on HVCC's public website indicating: "During its June 25 meeting, Hudson Valley Community College's Board of Trustees voted to terminate, with cause, its contract with Dr. Roger Ramsammy. . . .  Dr. Roger Ramsammy has served as president of Hudson Valley since July 2018. As previously shared, the board placed Dr. Ramsammy on administrative leave at a special meeting on May 15 following a Human Resources complaint filed against him. The college remains unable to share specific details of that complaint due to the confidentiality and privacy requirements of ongoing personnel and legal matters. However, members of our community must know that the college and its Board of Trustees follow clearly established policies and procedures for addressing any employee complaint, claim or allegation in a fair, thorough and expeditious manner.  I want to stress that the Board wishes to send a strong message that Hudson Valley does not tolerate inappropriate behavior by any [sic] or toward any member of the college community."

95.    The nature and substance of this statement indicates that Plaintiff was discharged "for cause" after the HVCC Board of Trustees followed "clearly established policies and procedures for addressing any employee complaint College," but that fact is untrue because Plaintiff was deprived of the ability to defend himself before the Board of Trustees as required by the terms and sprit of Plaintiff's employment agreement, and as required by federal and state constitutional due process.

96.    That same evening, local media outlets published detailed reports about the termination, including references to a staff complaint filed in May 2024, allegations of dishonesty and failure to follow lawful procedures by Plaintiff, and the invocation of the "just cause" clause in Plaintiff's contract to effectuate his discharge.

97. The termination letter sent to Plaintiff on June 26, 2024 indicated, *inter alia*, that the letter served as formal notice that Plaintiff's employment with HVCC was being terminated pursuant to Section 4.1(d) and section 4.1(e) of Plaintiff's Fourth Amended and Restated Employment Agreement (the "Agreement") effective in sixty (60) days.

98. The letter further indicates:

Reason for Termination:

1.  Dishonesty: The termination is being effectuated under Section 4.1(d) of the Agreement due to the commission of acts of dishonesty related to or affecting the College. Specifically, after an investigation, the Board determined that you were not forthcoming and truthful regarding your relationship and conduct related to certain College employees under your supervision.

2.  Failure to Adhere to Procedures or Directives. Additionally, your termination is pursuant to Section 4.1(e) for your refusal to follow, implement, or adhere to lawful procedures or directives established by the Board of Trustees of the State University of New York and the College's Board. Specifically, after an investigation, the Board determined that you violated SUNY & College policies, including SUNY policy #6507-Sexual Harassment Response and Prevention as well as HVCC's Anti-Discrimination and Harassment Policy.

99. The letter further indicates that Plaintiff's termination would become effective sixty (60) days from the date of that notice, during which time Plaintiff was placed on Administrative Leave.

100. The letter further indicates that Plaintiff shall have no contact with College students or employees unless authorized by the Board, and that Plaintiff was not to enter campus property for any reason without obtaining the approval of the College's Acting Director of Public Safety.

101. The letter further directed Plaintiff to ensure that all College property in his possession was returned to the College's Office of Human resources no later than July 1, 2024.

102. Further, the letter indicates that as of July 1, 2024, the College would no longer be

financially responsible for Plaintiff's membership fees for the Fort Orange Club and the Country Club of Troy.

103.    The letter also indicates that Plaintiff was required to vacate the Alumni House located on the HVCC Troy campus within 30 days from the date of that notice.

104.    HVCC provided no details of the allegations against Plaintiff upon which the termination was based, but instead made general unsupported allegations.

## AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT HUDSON VALLEY COMMUNITY COLLEGE, PLAINTIFF ALLEGES AS FOLLOWS:

105.    The foregoing allegations contained within paragraphs "1" through "104" are incorporated and re-alleged herein.

106.    On February 7, 2018, Plaintiff and HVCC entered into an employment agreement for Dr. Ramsammy to serve as President of HVCC from July 1, 2018 through September 30, 2023.

107.    The employment agreement set out the terms of Plaintiff's employment, including the Terms of the Agreement, Compensation, and Termination of Employment.

108.    The employment agreement provides at Section 4.1, "Termination by the Board for 'Just Cause'":

> **4.**    The Board may terminate the employment of the President under the Agreement with sixty (60) days prior written notice for "Just Cause" during which time the Board, at its discretion, may place the President on paid Administrative Leave. Examples of "Just Cause" termination of the President's employment include, but are not limited to, the following: (a) The refusal by the President to perform the employment duties reasonably required of the President as outlined in this Agreement; (b) The President's conviction of or a guilty plea to a felony whether or not relating to or affecting the College; (c) The President's conviction of a misdemeanor charge which directly results in a significant and detrimentally adverse affect on the College; (d) The commission of any act of dishonesty by the President, which relates to or affects the College; and (e) The refusal to follow, implement, or adhere to lawful procedures or directives established by the Board of Trustees of the State University of New York, the Commission of Education of the State of New York, the Board of Regents of the University of the State of New

York or the Board. (f) Any other material breach of this Agreement as defined in Section 4.2(a).[1]

**5.**    A termination for "Just Cause" described in clauses (a) and (f) in this Subsection 4.1 shall not be effective until the President has received sixty (60) days written notice of the proposed termination and the reasons therefore and has been granted, upon proper notice, the opportunity to appear before the Board, with legal counsel of his choosing and at his sole expense, to provide his arguments why the proposed termination is unwarranted and should not take place. If the Board should thereafter determine the termination is unwarranted, the College shall reimburse the President for all reasonable attorney fees, costs and expenses incurred.

109.    Plaintiff relied upon the terms of Section 4.1 in entering the employment agreement, and in agreeing to extensions of that employment agreement.

110.    Initially, Plaintiff's term of employment was from July 1, 2018, through September 30, 2023, but was thereafter extended to run from September 1, 2021, through August 30, 2026.

111.    On March 30, 2024, HVCC again extended Plaintiff's employment agreement based on Plaintiff's exemplary performance as President of HVCC.

112.    Plaintiff's employment agreement was again renewed and extended on March 30, 2024, for another five-year term, to last through August 30, 2029.

113.    Each of the renewed and extended employment agreements contained the same Section 4.1 discharge terms referenced above.

114.    Plaintiff has fully performed all obligations required under the employment agreement, including commencing employment, performing assigned duties in an exemplary manner, and complying with all HVCC policies and procedures.

---

[1] Section 4.2 addresses "Termination by the President for 'Good Reason,'" and provides at Section 4.2(a) that the President may terminate his employment with the College for: "(a) Involuntary reduction in the President's base salary without prior written consent of the President or any other material breach of this Agreement by the Board. A 'material breach' being defined as being so substantial so as to prevent this Agreement from being completed or otherwise defeats the underlying purpose(s) of the same."

115.    On or about June 26, 2024, HVCC, without proper prior notice or an opportunity for Plaintiff to appear before the HVCC Board of Trustees before a "for cause" termination decision was made as required by Plaintiff's employment contract, terminated Plaintiff's employment. This materially breached the terms of Section 4.1 of Plaintiff's employment agreement.

116.    The employment agreement constitutes a valid and enforceable contract between Plaintiff and Defendant HVCC.

117.    Plaintiff successfully performed all of his obligations under the employment agreement.

118.    Defendant HVCC breached the employment agreement with Plaintiff by, including but not limited to, terminating Plaintiff without proper prior notice or an opportunity to appear before the HVCC Board of Trustees before a "for cause" termination decision was made.

119.    Defendant HVCC breached the employment agreement with Plaintiff by, including but not limited to, preventing Plaintiff's performance under the contract.

120.    Defendant HVCC breached the employment agreement by erroneously determining that "just cause" for Dr. Ramsammy's termination existed, when it did not.

121.    As a direct and proximate result of HVCC's breach of the terms of Plaintiff's employment agreement, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, reputational harm, and other consequential damages in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:

122.    The foregoing allegations contained within paragraphs "1" through "121" are

incorporated and re-alleged herein.

123.    Under New York law, every contract is subject to an implied covenant of good faith and fair dealing.

124.    Defendants' actions in discharging Plaintiff without proper prior notice or an opportunity to appear in front of the HVCC Board of Trustees before a "for cause" termination decision was made frustrated Plaintiff's legitimate expectations under the employment agreement.

125.    Pursuant to his contract, Plaintiff understood that he was to be afforded adequate notice describing the reasons for his termination, and a hearing before the Board of Trustees prior to any termination decision.

126.    In fact, after Complainant made her allegations, Defendant Kelleher called Plaintiff and told him to stay home and that Plaintiff would get his chance "to talk about this," which Plaintiff understood to mean a hearing before the Board of Trustees prior to any termination decision.

127.    Further, after Complainant made her allegations, Plaintiff was told by HVCC legal counsel in his office that he would get a chance to speak about the allegations, which Plaintiff understood meant that he would get an opportunity to speak before the HVCC Board of Trustees about the allegations to defend himself.

128.    However, Plaintiff was not provided adequate notice claims against him, a hearing before the Board of Trustees prior to his termination, or adequate notice describing the reasons for his termination.

129.    Moreover, Plaintiff had no ability to provide evidence before the Board to contradict accusations that were never provided or otherwise presented to him.

130.    In discharging Plaintiff in the manner it did, Defendants acted in bad faith, and

deprived Plaintiff of the benefits of his employment, all contrary to the spirit of the employment agreement.

131.    In discharging Plaintiff in the manner it did, Defendants violated the implied covenant of good faith and fair dealing contained in the contract that is the subject of this action.

132.    As a direct and proximate result of Defendants' violation of the implied covenant of good faith and fair dealing in Plaintiff's employment agreement, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, and other consequential damages in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION FOR DISCRIMINATION PURSUANT TO NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL") ON THE BASIS OF RACE AND/OR NATIONAL ORIGIN AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:**

133.    The foregoing allegations contained within paragraphs "1" through "132" are incorporated and re-alleged herein.

134.    At all times relevant herein, HVCC is a covered employer pursuant to the NYSHRL.

135.    At all times relevant herein, Plaintiff was an employee of HVCC within the meaning of the NYSHRL (N.Y. Exec. Law § 290).

136.    Plaintiff is of a Black male of African, Latino, and Indian descent and ethnicity.

137.    Upon information and belief, the HVCC employees who made claims of impropriety against Plaintiff are White individuals of different ethnicities and national origins than Plaintiff.

138.    Upon information and belief, Dr. Ramsammy is the first African or Black president at the College.

139.    After starting his position, Plaintiff became aware of comments by HVCC Board

of Trustees members who laughed at certain peoples' ethnic sounding names.

140.    Further, Plaintiff experienced opposition from new Board Members without the Board members knowing Plaintiff or understanding what Plaintiff was accomplishing in the President's position.

141.    All this indicates that the members of the HVCC Board of Trustees harbored animus and/or bias against people of color and/or against minorities like Dr. Ramsammy.

142.    Defendants willfully determined to accept the allegations made by the White complainants instead of the denials by Plaintiff based upon consideration of the involved individuals' races, national origins, and/or ethnicities, and without affording Plaintiff proper prior notice of the allegations against him and without an opportunity to appear before the HVCC Board of Trustees to contest the allegations, demonstrating their racial, national origin, and ethnic bias and animus against Plaintiff.

143.    Defendants' actions occurred despite that the Omni Hotel's videos from the relevant period clearly demonstrated that Complainant's allegations from the Kentucky conferences were false.

144.    Further, evidence existed that Plaintiff changed the lock code on his office door shortly after Complainant began working for him, contradicting Complainant's allegation that Plaintiff offered Complainant use of that office for improper purposes.

145.    By and through its course of conduct, Defendant HVCC and its agents violated the New York State Human Rights Law, Exec. Law §§ 296 *et seq*., by terminating Plaintiff because of his race, national origin, and ethnicity.

146.    Defendant Kelleher engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding and abetting, inciting, compelling, and

coercing the discriminatory conduct by supporting the HVCC Board of Trustees' decision to discharge Plaintiff without proper prior notice of the allegations against him and without an opportunity to appear before the Board to present his defense, and based upon the White individuals' allegations.

147.    This conduct occurred due to the fact that Plaintiff was a member of a protected class.

148.    Plaintiff was harmed as a result of this conduct.

149.    As a consequence of Defendants' discriminatory actions, Plaintiff has suffered damages including but not limited to severe emotional distress and economic damages.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR DISCRIMINATION PURSUANT TO NYSHRL ON THE BASIS OF GENDER AGINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:**

150.    The foregoing allegations contained within paragraphs "1" through "149" are incorporated and re-alleged herein.

151.    At all times relevant herein, HVCC is a covered employer pursuant to the NYSHRL.

152.    At all times relevant herein, Plaintiff was an employee of HVCC within the meaning of the NYSHRL (N.Y. Exec. Law § 290).

153.    Plaintiff is a male whereas the HVCC employees who asserted claims of impropriety against Plaintiff are females.

154.    Upon information and belief, members of the HVCC Board of Trustees had expressed their view that two women who had been vying for the President's position when Plaintiff was hired should have been hired, and that a female should have been given a chance at the President's position.

155.    All this indicates that the members of the HVCC Board of Trustees harbored bias and animus against males in the President's position, like Dr. Ramsammy.

156.    Despite that the Omni Hotel's videos from the relevant date clearly demonstrated that Complainant's allegations from the Kentucky conferences were false, and that a member of HVCC staff could have corroborated Plaintiff's contention that he sought to limit Complainant's access to and interactions with Complainant in Plaintiff's office, Defendants HVCC, the HVCC Board of Trustees, and Kelleher willfully determined to accept the allegations made by female complainants instead of the denials by Plaintiff based upon consideration of the involved individual's genders, and without affording Plaintiff prior proper notice of the allegations against him and without an opportunity to appear before the HVCC Board of Trustees to contest the allegations.

157.    Defendants' actions demonstrate their gender bias and animus against Plaintiff.

158.    Defendant Kelleher, by supporting the HVCC Board of Trustees' decision to discharge Plaintiff without proper prior notice of the allegations against him and without an opportunity to appear before the Board to present his defense, and based upon the females' allegations, aided and abetted the HVCC Board of Trustees' discriminatory decision to discharge Plaintiff.

159.    This conduct occurred due to the fact that Plaintiff was a member of a protected class.

160.    Plaintiff was subjected to this conduct by these Defendants and he was harmed as a result of this conduct.

161.    As a consequence of Defendants' discriminatory actions, Plaintiff has suffered damages including but not limited to severe emotional distress and economic damages.

<u>**AS AND FOR A FIFTH CAUSE OF ACTION FOR DEFAMATION AGAINST ALL**</u>
<u>**DEFENDANTS,  PLAINTIFF ALLEGES AS FOLLOWS:**</u>

162.    The foregoing allegations contained within paragraphs "1" through "161" are incorporated and re-alleged herein.

163.    That Defendants did intentionally produce false statements purporting to be factual, which exposed Plaintiff to public ridicule, embarrassment, and more.

164.    For instance, on or about June 25, 2024, Defendant Kelleher as HVCC Board Chair placed a message on HVCC's public website indicating that the HVCC Board of Trustees "voted to terminate, with cause, its contract with Dr. Roger Ramsammy," and that "the Board wishes to send a strong message that Hudson Valley does not tolerate inappropriate behavior by any [sic] or toward any member of the college community."

165.    The nature and substance of this statement indicates that Plaintiff was discharged "for cause" after the HVCC Board of Trustees followed "clearly established policies and procedures for addressing any employee complaint College," but that fact is untrue because Plaintiff was deprived of the ability to defend himself before the Board of Trustees as required by the terms and sprit of Plaintiff's employment agreement.

166.    Further, the statement indicates that the Board of Trustees was aware of information that it could not share but that constituted "cause" for Plaintif's discharge, and involved "inappropriate behavior" toward a member of the HVCC community. That statement is untrue based on the evidence presented during the investigation in this case that demonstrated that Complainant's allegations against Plaintiff were false.

167.    By making this statement in the context of Dr. Ramsammy's discharge, the statement carries the unmistakable yet false contention that Dr. Ramsammy engaged in inappropriate behavior of such magnitude as to justify his discharge.

168.    Defendant Kelleher's June 25, 2024 statement was also published and/or repeated by several news agencies in the Capital District including newspapers and television stations.

169.    Defendant Kelleher made this statement in his personal capacity.

170.    Defendant Kelleher, as the Chair of the HVCC Board of Trustees, was also speaking on behalf of, and as an agent of, HVCC and the HVCC Board of Trustees.    Thus, Defendant Kelleher made this statement in his official capacity.

171.    That Defendants negligently, recklessly, and intentionally with malice published and/or communicated the false statements to the general public and third parties without permission or authorization of Plaintiff.

172.    That as a consequence of Defendants' false and malicious statements, Plaintiff has suffered harm to his reputation, standing in the community, and damage to his career and livelihood.

173.    That Defendants' false statements and accusations of inappropriate behavior resulting in Dr. Ramsammy's discharge exposed Plaintiff to public contempt and ridicule, and prevent or significantly hinder Plaintiff's ability to obtain future employment in Plaintiff's chosen field, and therefore constitute defamation *per se*.

174.    That as a consequence of Defendants' acts, Plaintiff has suffered significant damages and reputational harm.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR STIGMA PLUS DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:

175.    The foregoing allegations contained within paragraphs "1" through "174" are incorporated and re-alleged herein.

176.    That all times relevant, Plaintiff was a public employee of HVCC.

177.    That Plaintiff at all relevant times possessed a property interest in his continued employment, and a liberty interest in his good and well-earned reputation, honor, and integrity.

178.    That Defendants disclosed stigmatizing information concerning Plaintiff's alleged misconduct, including statements implying dishonesty and procedural violations, without affording Plaintiff an opportunity to contest the allegations.

179.    For instance, Defendant Kelleher, acting on behalf of HVCC, made stigmatizing statements about Plaintiff that call into question Plaintiff's good name, reputation, honor and integrity, and that denigrate Plaintiff's competence as a professional and impugn Plaintiff's professional reputation in such a fashion as to effectively put a significant roadblock to Plaintiff's continued ability to practice his profession.

180.    Defendant Kelleher's June 25, 2024 statement published on the HVCC public webpage and in numerous publicly available news sources carries the unmistakable yet false contention that Dr. Ramsammy engaged in inappropriate behavior of such magnitude as to justify his discharge.

181.    That Defendant Kelleher's June 25, 2024 stigmatizing statement was disseminated through official channels and media outlets, resulting in reputational harm and professional ostracization.

182.    That Defendant Kelleher's June 25, 2024 stigmatizing statement is capable of being proved false.

183.    That Defendant Kelleher's June 25, 2024 stigmatizing statement is false.

184.    That Defendant Kelleher's June 25, 2024 stigmatizing statement was made concurrently in time to Plaintiff's dismissal from government employment.

185.    That Plaintiff was not provided with any process by which he could have cleared

28

his name and restored his good reputation.

186.    That Defendant Kelleher's June 25, 2024 stigmatizing statement denigrated Plaintiff's competence as a professional and impugned his professional reputation in such a fashion as to effectively put a significant roadblock in Plaintiff's continued ability to practice his profession.

187.    Plaintiff suffered a tangible loss of employment and contractual benefits in conjunction with the stigmatizing statements, satisfying the "plus" element of the stigma-plus doctrine.

188.    Defendants failed to provide Plaintiff with a name-clearing hearing or any procedural mechanism to rebut the allegations, thereby violating his liberty interest in his good reputation and future employment.

189.    By virtue of the foregoing, Defendants deprived Plaintiff of clearly established rights protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and as a result, Plaintiff sustained the damages herein alleged.

**AS AND FOR A SEVENTH  CAUSE OF ACTION FOR A FEDERAL CONSTITUTIONAL EQUAL PROTECTION CLAIM UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS,  PLAINTIFF ALLEGES AS FOLLOWS:**

190.    The foregoing allegations contained within paragraphs "1" through "189" are incorporated and re-alleged herein.

191.    In April 2024, Complainant, a White female employee of HVCC, lodged a complaint alleging sexual assault and harassment by Dr. Ramsammy.

192.    Dr. Ramsammy cooperated fully with the College's internal investigation, denied the allegations, and presented evidence that contradicted Complainant's allegations against Dr. Ramsammy.

193.    Other white, female HVCC staff members made allegations of impropriety against Plaintiff, which he has denied.

194.    Upon information and belief, the College's investigation failed to uncover any objective evidence substantiating the claims of impropriety against Plaintiff.

195.    Despite this, HVCC terminated Dr. Ramsammy's employment, presumably relying upon the allegations against Plaintiff and rejecting Dr. Ramsammy's denials as the basis for discharge.

196.    HVCC's decision to credit the white and female accusers' allegations over Dr. Ramsammy's denials was motivated, in whole or in part, by discriminatory animus and bias against Dr. Ramsammy based on his race, national origin, ethnicity, and gender.

197.    Upon information and belief, similarly situated individuals of different races, national origins, ethnicities, or genders have received more favorable treatment in comparable circumstances.

198.    Upon information and belief, Defendants treated Plaintiff differently than similarly situated employees and executives who were accused of misconduct but afforded notice, investigation summaries, and opportunities to respond before the HVCC Board of Trustees.

199.    Plaintiff's termination was executed in a manner that deviated from established norms and procedures applied to other similarly situated individuals, and the disparate treatment was not justified by any rational basis.

200.    Defendants' actions were arbitrary, discriminatory, and motivated by impermissible considerations, thereby violating Plaintiff's right to equal protection under the law.

201.    HVCC's actions deprived Dr. Ramsammy of equal protection under the law.

202.    Defendant HVCC, acting under color of state law, intentionally discriminated

against Plaintiff on the basis of race, national origin, ethnicity, and gender.

203.    Defendant HVCC's discriminatory conduct violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

204.    As a direct and proximate result, Plaintiff suffered economic loss, reputational harm, emotional distress, and other damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A FEDERAL CONSTITUTIONAL DENIAL OF DUE PROCESS CLAIM  UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS,  PLAINTIFF ALLEGES AS FOLLOWS:**

205.    The foregoing allegations contained within paragraphs "1" through "204" are incorporated and re-alleged herein.

206.    Plaintiff had a property interest in his continued employment under his renewed contract with HVCC, which included specific terms and conditions governing termination for cause.

207.    Plaintiff had a liberty interest in his good reputation.

208.    In April 2024, Complainant, a White female employee of HVCC, lodged an internal complaint alleging sexual assault and harassment by Dr. Ramsammy.

209.    Plaintiff was not provided with Complainant's internal complaint.

210.    On or about May 15, 2024, Plaintiff was placed on paid administrative leave following the initiation of an internal investigation into alleged misconduct, that Dr. Ramsammy later learned involved allegations of sexual harassment and sexual assault toward Complainant.

211.    Plaintiff was not informed of the specific allegations made against him by Complainant, nor was he provided with any documentation or summary of the complaint against him.

212.    At no point prior to or during the investigation was Plaintiff provided by HVCC

with written notice of the specific allegations against him. Plaintiff was not formally informed by HVCC of the nature of the alleged misconduct, or the specific factual basis for the investigation.

213.    The investigation was conducted by a third party without Plaintiff's knowledge of its scope, procedures, or findings.

214.    Dr. Ramsammy cooperated fully with HVCC's internal investigation, denied the allegations that he became aware of, and presented evidence that contradicted Complainant's allegations against Dr. Ramsammy.

215.    Upon information and belief, HVCC's investigation failed to uncover any objective evidence substantiating the allegations against Plaintiff.

216.    Despite this, HVCC accepted and relied upon the allegations against Plaintiff, and dismissed and rejected Dr. Ramsammy's denials of those allegations.

217.    Plaintiff was not provided with a copy of any investigative report or any summary of its conclusions prior to the HVCC Board of Trustees' decision to terminate his employment.

218.    On June 25, 2024, the HVCC Board of Trustees voted at a public meeting to discharge Plaintiff from his position as President.

219.    This decision was made without convening a hearing, without affording Plaintiff an opportunity to respond to the allegations, and without providing Plaintiff with a meaningful opportunity to be heard before an impartial decision-maker.

220.    Plaintiff was not given an opportunity to respond to the allegations, present evidence, or appear before the Board of Trustees in any hearing.

221.    Upon information and belief, HVCC maintains internal policies and procedures governing employee discipline and termination, which include provisions requiring notice of alleged misconduct and an opportunity to respond prior to adverse employment action. These

policies, along with Plaintiff's employment contract and established practices and communications from HVCC, created a reasonable expectation that Plaintiff would not be terminated without cause and without procedural safeguards. By failing to adhere to its own disciplinary framework, Defendants not only violated Plaintiff's contractual and institutional expectations, but also caused a deprivation of his protected property and liberty interests without due process of law.

222.    On June 25, 2024, the HVCC Board of Trustees voted to terminate Plaintiff's employment without providing any notice of the charges or an opportunity to be heard.

223.    Plaintiff's termination was made public, thereby damaging Plaintiff's reputation and professional standing, without affording him procedural safeguards.

224.    Defendants' actions deprived Plaintiff of his protected property interest in continued employment and his liberty interest in his reputation and ability to pursue his chosen profession.

225.    Defendants deprived Plaintiff of his constitutional right to due process by terminating his employment without notice of the charges, and without a hearing or an opportunity to respond before the HVCC Board of Trustees.

226.    The actions of Defendants in conducting a one-sided investigation, failing to provide Plaintiff with notice and an opportunity to respond in a hearing before the HVCC Board of Trustees, and terminating his employment without a hearing constitutes a violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

227.    As a result of this conduct, Plaintiff suffered damages including loss of income, reputational harm, emotional distress, related compensatory and other consequential damages.

**AS AND FOR AN NINTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS,  PLAINTIFF ALLEGES AS**

**FOLLOWS:**

228.    The foregoing allegations contained within paragraphs "1" through "227" are incorporated and re-alleged herein.

229.    Plaintiff's termination followed a third-party investigation into allegations of misconduct. HVCC failed to disclose the findings of the investigation or the specific grounds for termination.

230.    Upon information and belief, the investigative results were based upon allegations that were denied by Plaintiff, that were in some instances directly contradicted by irrefutable evidence, and/or that were discredited by substantial evidence. Nevertheless, Defendants chose to accept the allegations of misconduct against Plaintiff based on the races, national origins, ethnicities, and genders of the accusers.

231.    Plaintiff had recently signed a renewed employment contract in March 2024, increasing his salary to $275,000 annually, with a scheduled raise to $300,000 in September 2024. The termination under "just cause" provisions resulted in the loss of salary, severance, and benefits.

232.    Defendants cited contract clauses related to dishonesty and failure to follow lawful procedures as grounds for termination, but did not provide Plaintiff with any substantiating evidence or opportunity to contest these claims.

233.    The Faculty Association of HVCC issued a public statement supporting the termination but acknowledged widespread concern among staff about the lack of transparency and communication during the investigation process.

234.    Plaintiff learned of his termination through media reports before receiving formal notification, causing reputational harm, emotional distress, and professional ostracization.

235.    HVCC's failure to follow its own disciplinary procedures, combined with the public nature of the termination and lack of due process, caused Plaintiff severe emotional and psychological harm. Plaintiff has experienced anxiety, depression, reputational damage, and loss of professional standing.

236.    Defendants' actions were extreme, outrageous, and beyond the bounds of decency tolerated in a civilized society.

237.    Defendants acted with an intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress.

238.    There is a causal connection between Defendants' conduct and the severe emotional distress suffered by Plaintiff.

### AS AND FOR AN TENTH CAUSE OF ACTION FOR NEGLIGENT  INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS,  PLAINTIFF ALLEGES AS FOLLOWS:

239.    The foregoing allegations contained within paragraphs "1" through "238" are incorporated and re-alleged herein.

240.    Plaintiff's termination followed a third-party investigation into allegations of misconduct. HVCC failed to disclose the findings of the investigation or the specific grounds for termination.

241.    Upon information and belief, the investigative results were based upon allegations that were, in some cases, directly contradicted by irrefutable evidence, and/or were discredited by substantial evidence. Nevertheless, Defendants chose to accept the allegations of misconduct against Plaintiff despite Plaintiff's denials based on the races, national origins, ethnicities, and genders of the accusers.

242.    Plaintiff had recently signed a renewed employment contract in March 2024,

increasing his salary to $275,000 annually, with a scheduled raise to $300,000 in September 2024. The termination under "just cause" provisions resulted in the loss of salary, severance, and benefits.

243.    Defendants HVCC, the HVCC Board of Trustees, and Neil J. Kelleher, acting under color of state law, violated Plaintiff's due process rights by publicly discharging him without affording him proper notice or an opportunity to be heard, and by disseminating stigmatizing allegations in connection with Plaintiff's termination.

244.    On June 25, 2024, the HVCC Board of Trustees, chaired by Defendant Kelleher, voted publicly to terminate Plaintiff's employment under "just cause" provisions of his employment agreement, citing Sections 4.1(d) and (e) "of the President's contract."

245.    The termination was announced in a public meeting and immediately reported in the media.

246.    One local news agency obtained a copy of Dr. Ramsammy's contract through a records request, and reported on July 22 2024 (updated on July 23, 2024) that the contract "details the grounds for his termination. It's stated in two clauses; one regarding dishonesty and the other about morals." After reporting what Sections 4.1(d) and (e) of Plaintiff's contract state, the news report continued: "This means that Ramsammy lied during his time as president. HVCC would not disclose any more details about the matter." The news report continued: "Since Ramsammy was fired under 'Just Cause,' by the terms of his contract, he will not receive any further salary or benefits following his date of termination. HVCC says no changes are anticipated."

247.    The Board of Trustees' termination decision was disseminated without proper prior notice to Plaintiff of the claims against him, and without an opportunity for Plaintiff to respond before the HVCC Board of Trustees or an opportunity to clear his name.

248. HVCC cited contract clauses related to dishonesty and failure to follow lawful procedures as grounds for termination, but did not provide Plaintiff with any substantiating evidence or opportunity to contest these claims before the HVCC Board of Trustees.

249. The Faculty Association of HVCC issued a public statement supporting the termination but acknowledged widespread concern among staff about the lack of transparency and communication during the investigation process.

250. HVCC did not issue any clarifying or corrective statement, nor did it provide Plaintiff with an opportunity to respond to the allegations directly to the HVCC Board of Trustees either before or after the termination vote.

251. The HVCC Faculty Association issued a public statement acknowledging that staff learned of the investigation and termination "via the media," and expressed concern about the administration's lack of transparency. Faculty President Robert Whitaker stated: "Our members wanted to know why the president was not placed on leave at the time the complaint was filed... That was wrong."

252. Plaintiff learned of his termination through media reports before receiving formal notification, causing reputational harm, emotional distress, and professional ostracization.

253. The College's failure to follow its own disciplinary procedures, combined with the public nature of the termination and lack of due process, caused Plaintiff severe emotional and psychological harm.

254. Defendants owed Plaintiff a duty of care in the handling of his employment and termination.

255. Defendants breached that duty by failing to conduct a fair and transparent process, and by allowing defamatory and stigmatizing information to be disseminated publicly.

256.    Defendants' actions were extreme, outrageous, and beyond the bounds of decency tolerated in a civilized society.

257.    Plaintiff suffered foreseeable and severe emotional harm as a result of Defendants' negligence.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR A FEDERAL CONSTITUTIONAL FAILURE TO TRAIN CLAIM UNDER 42 U.S.C. § 1983 AGAINST HVCC,  PLAINTIFF ALLEGES AS FOLLOWS:**

258.    The foregoing allegations contained within paragraphs "1" through "257" are incorporated and re-alleged herein.

259.    Defendant Hudson Valley Community College is a department of the County of Rensselaer, a municipal entity subject to suit under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

260.    HVCC, through its Board of Trustees and senior administrators, maintained policies, customs, or practices that exhibited deliberate indifference to the constitutional rights of its employees, including Plaintiff.

261.    Specifically, HVCC failed to adequately train or supervise its officials and decision-makers in the proper handling of employee discipline, due process obligations, and reputational harm arising from public disclosures.

262.    The College's failure to train and/or supervise was the moving force behind the deprivation of Plaintiff's rights under the Fourteenth Amendment, including: a. The denial of procedural due process in connection with his termination; b. The public dissemination of stigmatizing allegations without a name-clearing hearing; c. The arbitrary and unequal treatment compared to similarly situated employees.

263.    HVCC's failure to implement or enforce adequate safeguards and training protocols

resulted in a termination process that violated clearly established constitutional rights and deviated from accepted standards of fairness and transparency.

264.    The conduct of HVCC officials—including the public vote to terminate Plaintiff without prior notice or hearing, and the release of damaging information to the media—reflects a pattern of disregard for constitutional protections and a lack of institutional oversight.

265.    HVCC treated Complainant and Plaintiff inconsistently: the accusers' allegations were believed and Plaintiff's denials were rejected based on the races, national origins, ethnicities, and genders of the individuals involved.  Further, Plaintiff was not provided with formal notice by HVCC of the allegations against him, nor was he afforded an opportunity to appear before the Board of Trustees to argue his case and defend himself. This disparity suggests a lack of standardized oversight and procedural consistency.

266.    Upon information and belief, HVCC's published policies contain detailed procedures for student discipline but lack any codified framework for executive or faculty discipline, including name-clearing hearings or reputational safeguards.

267.    This institutional gap reflects a broader failure to train or supervise officials in handling sensitive personnel matters.

268.    Following Plaintiff's termination, news outlets, including WNYT NewsChannel 13, published statements such as "This means Ramsammy lied during his time as president," attributing the termination to alleged dishonesty and misconduct. HVCC did not issue any clarifying or corrective statement, nor did it provide Plaintiff with an opportunity to respond to the allegations before or after the HVCC Board of Trustees  voted to terminate Plaintiff's employment contract.

269.    The HVCC Faculty Association issued a public statement acknowledging that staff

learned of the investigation and termination "via the media," and expressed concern about the administration's lack of transparency. Faculty President Robert Whitaker stated: "Our members wanted to know why the president was not placed on leave at the time the complaint was filed... That was wrong."

270.    As a direct and proximate result of HVCC's unconstitutional policies and practices, Plaintiff suffered economic loss, reputational damage, emotional distress, and other compensable injuries.

## AS AND FOR AN TWELFTH CAUSE OF ACTION FOR MANTAINING AN UNCONSTITUTIONAL POLICY OR PRACTINCE UNDER 42 U.S.C. § 1983 AGAINST HVCC, PLAINTIFF ALLEGES AS FOLLOWS:

271.    The foregoing allegations contained within paragraphs "1" through "270" are incorporated and re-alleged herein.

272.    HVCC, through its Board of Trustees and senior officials, maintained a custom or policy of publicly disclosing stigmatizing allegations against employees in connection with termination decisions, without providing affected individuals with prior notice or an opportunity to respond.

273.    This custom or policy was carried out in Plaintiff's case when HVCC officials publicly voted to terminate his employment during a public board meeting on June 25, 2024, and caused media outlets to report that Plaintiff was terminated for "dishonesty" and for violations of lawful procedures and directives, including sexual harassment policies, some of which were disseminated before Plaintiff received formal notice or any opportunity to contest the allegations.

274.    The College's failure to issue any clarifying or corrective statement, combined with its failure to provide Plaintiff with a name-clearing hearing, reflects a deliberate institutional practice of disregarding reputational harm and due process obligations.

275. HVCC's public handling of Plaintiff's termination was consistent with prior instances in which the College failed to protect employee reputational interests or provide procedural safeguards before releasing damaging information to the public.

276. This custom or policy was the moving force behind the violation of Plaintiff's constitutional rights under the Fourteenth Amendment to procedural due process to protect his liberty interest in his reputation and his property interest in his contractual employment position.

277. As a direct and proximate result of HVCC's unconstitutional custom or policy, Plaintiff suffered reputational damage, emotional distress, economic loss, and other compensable injuries.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR VIOLAION OF DUE PROCESS UNDER ARTICLE I, § 6 OF THE NEW YORK STATE CONSTITUTION AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:**

278. The foregoing allegations contained within paragraphs "1" through "277" are incorporated and re-alleged herein.

279. Article I, § 6 of the New York State Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.

280. Defendants HVCC, the HVCC Board of Trustees, and Neil J. Kelleher, acting under color of state law, violated Plaintiff's due process rights by publicly discharging him without affording him proper notice or an opportunity to be heard, and by disseminating stigmatizing allegations in connection with Plaintiff's termination.

281. On June 25, 2024, the HVCC Board of Trustees, chaired by Defendant Kelleher, voted publicly to terminate Plaintiff's employment under "just cause" provisions of his employment agreement, citing Sections 4.1(d) and (e) "of the President's contract."

282. The termination was announced in a public meeting and immediately reported in

41

the media.

283.    One local news agency obtained a copy of Dr. Ramsammy's contract through a records request, and reported on July 22, 2024 (updated on July 23, 2024) that the contract "details the grounds for his termination. It's stated in two clauses; one regarding dishonesty and the other about morals." After reporting what Sections 4.1(d) and (e) of Plaintiff's contract state, the news report continued: "This means that Ramsammy lied during his time as president. HVCC would not disclose any more details about the matter." The news report continued: "Since Ramsammy was fired under 'Just Cause,' by the terms of his contract, he will not receive any further salary or benefits following his date of termination. HVCC says no changes are anticipated."

284.    The Board of Trustees' termination decision was disseminated without proper prior notice to Plaintiff of the claims against him, and without an opportunity for Plaintiff to respond before the HVCC Board of Trustees or an opportunity to clear his name.

285.    HVCC and its Board of Trustees failed to provide Plaintiff with a name-clearing hearing or any procedural safeguards required under the New York Constitution.

286.    Defendant Kelleher, in his individual capacity, participated in and ratified the termination process and public dissemination of stigmatizing allegations. In his official capacity, he failed to implement or enforce constitutionally compliant procedures.

287.    The actions of HVCC, the Board of Trustees, and Defendant Kelleher deprived Plaintiff of his liberty and property interests without due process, and caused reputational harm, emotional distress, and economic loss.

288.    No alternative remedy exists under state law that would adequately compensate Plaintiff for the constitutional violations alleged herein.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor

and grant the following relief:

      a.  Compensatory damages in an amount to be determined at trial, including lost wages, reputational harm, emotional distress, and other economic and non-economic injuries;

      b.  Punitive damages against individual Defendants sued in their personal capacities, to deter future violations of constitutional rights;

      c.  Injunctive relief requiring Hudson Valley Community College to:

          i.  Convene a name-clearing hearing affording Plaintiff an opportunity to rebut the stigmatizing allegations publicly disseminated in connection with his termination;

          ii.  Expunge or retract official records and public statements that falsely imply dishonesty or misconduct by Plaintiff;

          iii.  Adopt and implement written policies and procedures governing executive discipline, pre-termination notice, name-clearing hearings, and internal communication protocols to ensure compliance with constitutional standards;

      d.  Declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

      e.  Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

      f.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims triable in this action.


Dated:  September 23, 2025.
Albany, New York

**CAPEZZA HILL, LLP**

By: _____
BENJAMIN W. HILL, ESQ.
Attorneys for Plaintiff
30 South Pearl St. P-110
Albany, NY 12207
(518) 478-6065
ben@capezzahill.com