UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DR. ROGER RAMSAMMY,

                    Plaintiff,

           v.

HUDSON VALLEY COMMUNITY COLLEGE,
BOARD OF TRUSTEES OF HUDSON VALLEY
COMMUNITY COLLEGE, and NEIL J.
KELLEHER, Chair of the Board of Trustees of
Hudson Valley Community College, in his
individual and official capacities,

                    Defendants.

Civil Action No. 1:25-cv-1328
(AMN/PJE)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL
MOTION TO DISMISS THE COMPLAINT**

---

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendants*
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
T: 518.533.3000
E: rmanfredo@bsk.com
    kwieneke@bsk.com

*Of Counsel:*   Robert F. Manfredo, Esq.
               Kristina Wieneke, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES........................................................................................................iii

PRELIMINARY STATEMENT............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 1

   A.  Plaintiff's Employment Agreement with HVCC ............................................... 1

   B.  HVCC's Termination of Plaintiff ....................................................................... 3

STANDARD OF REVIEW ...................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

POINT I  PLAINTIFF'S NOTICE OF CLAIM WAS UNTIMELY AND MANDATES
DISMISSAL OF CERTAIN CLAIMS AS A MATTER OF LAW ................................. 6

   A.  The Court Should Dismiss the Third and Fourth Causes of Action for Discrimination
Due to the Untimely Notice of Claim ................................................................. 7

   B.  The Court Should Dismiss the Fifth Cause of Action for Defamation Due to the
Untimely Notice of Claim.................................................................................... 9

   C.  The Court Should Dismiss the Ninth and Tenth Causes of Action for Intentional and
Negligent Emotional Distress Due to the Untimely Notice of Claim.................. 9

   D.  The Court Should Dismiss the Fourteenth Cause of Action for Violation of Due Process
Under the New York State Constitution Due to the Untimely Notice of Claim ............... 10

POINT II  PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE PARTIALLY
DISMISSED FOR FAILURE TO STATE A CLAIM ..................................................11

POINT III  THE SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED AS
DUPLICATIVE AND CONTRADICTORY ................................................................. 12

POINT IV  THE THIRD AND FOURTH CAUSES OF ACTION FOR DISCRIMINATION
SHOULD BE DISMISSED BASED ON PLAINTIFF'S FAILURE TO STATE A CLAIM ....... 13

POINT V  THE FIFTH CAUSE OF ACTION FOR DEFAMATION SHOULD BE
DISMISSED FOR FAILURE TO STATE A CLAIM ................................................... 16

   A.  The Complaint Fails to Plead a False Statement and any Allegedly Defamatory
Statements Are Protected Expressions of Opinion ........................................... 17

   B.  Mr. Kelleher's Statements are Protected by Qualified Privilege ...................... 18

i

C.    Plaintiff Is a Public Figure and Fails to Plead Actual Malice. .......................... 19

POINT VI  THE NINTH AND TENTH CAUSES OF ACTION SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM ........................................................................ 20

A.    Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress .............. 20

B.    Plaintiff's Negligent Infliction of Emotional Distress Claim Is Barred by The New
York State Workers' Compensation Law and Otherwise Fails to State a Claim .............. 21

POINT VII  THE SEVENTH CAUSE OF ACTION FAILS TO STATE A CLAIM UPON
WHICH RELIEF MAY BE GRANTED ...................................................................... 22

POINT VIII  PLAINTIFF'S DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW .......... 24

A.    The Availability of an Adequate Post-Deprivation Remedy Defeats Plaintiff's Stigma
Plus Claim ................................................................................................................ 24

B.    The Availability of a Proceeding Under Article 78 of the CPLR Bars Plaintiff's Federal
and State Due Process Claims .................................................................................... 25

POINT IX  PLAINTIFF'S MONELL CLAIMS FAIL FOR INSUFFICIENT PLEADING ....... 26

A.    Plaintiff Fails to State a *Monell* Claim Under Policy or Practice ..................................... 27

B.    Plaintiff's Fails to State a Legally Plausible Failure-to-Train Claim ............................... 28

C.    Plaintiff's Section 1983 Claims Against Defendants Must be Dismissed ....................... 30

POINT X  DEFENDANT KELLEHER IS ENTITLED TO QUALIFIED IMMUNITY ........... 30

CONCLUSION .......................................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001) ................................................................................16

*Allah v. Juchenwioz*,
   2004 WL 2389823 (S.D.N.Y. 2004) ...................................................................31

*Almonte v. City of Long Beach*,
   478 F.3d 100 (2d Cir. 2007) ................................................................................31

*Anderson v. Nassau County Dept. of Corr.*,
   558 F. Supp. 2d 283 (E.D.N.Y. 2008) ................................................................11

*Aponte v. Town of Islip*,
   236 A.D.3d 424 (1st Dept. 2025) ..........................................................................8

*Argonaut Ins. Co. v. City of Troy*,
   No. 1:19-CV-1247 TJM/CFH, 2020 U.S. Dist. LEXIS 68664
   (N.D.N.Y. Apr. 20, 2020) ....................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................5, 14, 15

*Batista v. Rodriguez*,
   702 F.2d 393 (2d Cir. 1983) ................................................................................28

*Beardslee v. Inflection Energy, LLC*,
   904 F. Supp. 2d 213 (N.D.N.Y. 2012) ................................................................12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544**,** 127 S. Ct. 1955 (2007) ..............................................................5, 15

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) ...................................................................18 *n.10*

*Buon v. Spindler*,
   65 F.4th 64 (2d Cir. 2023) ...................................................................................16

*Burrell v. City Univ. of NY*,
   995 F. Supp. 398 (S.D.N.Y. 1998) ......................................................................10

*Canady v. Union 1199*,
   253 F. Supp. 3d 547 (W.D.N.Y. 2017) ...............................................................13

iii

*Carey v. Carey*,
220 A.D.3d 477 (1st Dept. 2023) ............................................................................18

*Chardon v. Fernandez*,
454 U.S. 6 (1981) ....................................................................................................7

*Charles W. v. Maul*,
214 F.3d 350 (2d Cir. 2000) ...................................................................................31

*Clark v. Dominique*,
798 F. Supp. 2d 390 (N.D.N.Y. 2011) ..............................................................25, 26

*Clarson v. City of Long Beach*,
132 A.D.3d 799 (2d Dept. 2015) .....................................................................14 n.8

*Claudio v. City of New York*,
423 F. Supp. 2d 170 (S.D.N.Y. 2006) .....................................................................27

*Collins v. New York City Transit Authority*,
305 F.3d 113, 118 (2d Cir. 2002) ...........................................................................13

*Como v. Riley*,
287 A.D.2d 416 (1st Dept. 2001) ............................................................................21

*Conde v. Mid Hudson Regional Hosp. Med. Ctr.*,
No. 22-cv-03085 (VB), 2024 U.S. Dist. LEXIS 8658
(S.D.N.Y. Jan. 12, 2024) .........................................................................................23

*Curren v. Carbonic Sys., Inc.*,
58 A.D.3d 1104 (3d Dept. 2009) .............................................................................18

*Dayton v. City of Middletown*,
786 F. Supp. 2d 809 (S.D.N.Y. 2011) ................................................................7, 10

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*,
810 F.3d 861 (2d Cir. 2015) ...................................................................................12

*DuBois v. Brookdale Hospital and Medical Center*,
29 A.D.3d 731 (2d Dept. 2006) ......................................................................14 n.8

*Fahmy v. Duane Reade*,
2005 WL 2338711 (S.D.N.Y. 2005) ........................................................................21

*Federico v. Public Schools of the Tarrytowns*,
955 F. Supp. 194 (S.D.N.Y. 1997) .........................................................................25

*Fesseha v. TD Waterhouse Inv. Servs.*,
305 A.D.2d 268 (1st Dept. 2003) ............................................................................13

*Gaby v. Bd. of Trustees,*
  348 F.3d 62 (2d Cir. 2003)..................................................................................30

*Galanova v. Safir,*
  138 A.D.3d 686 (2d Dept. 2016) .........................................................................17

*Gibson v, SCE Group, Inc.,*
  391 F. Supp. 3d 228 (S.D.N.Y. 2019)....................................................................9

*Greene v. Trustees of Columbia University,*
  234 F. Supp. 2d 368 (S.D.N.Y. 2002)..................................................................21

*Hame v. Lawson,*
  70 A.D.3d 640 (2d Dept. 2010) ...................................................................18 *n.10*

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ...........................................................................................31

*Harris v. Provident Life & Accident Ins. Co.,*
  310 F.3d 73 (2d Cir. 2002)..................................................................................13

*Hellenic American Neighborhood Action Committee v. City of New York,*
  101 F.3d 877 (2d Cir. 1996).................................................................................25

*Holden v. Port Auth. of NY & New Jersey,*
  521 F. Supp. 3d 415 (S.D.N.Y. 2021).............................................................26, 29

*Holland v. City of Poughkeepsie,*
  90 A.D.3d 841 (2d Dept. 2011) ...........................................................................26

*Hope v. Pelzer,*
  536 U.S. 730, 739 (2002).....................................................................................31

*Howell v. N.Y. Post Co.,*
  81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ............................................................20

*Iacovangelo v. Correctional Med. Care, Inc.,*
  624 F. App'x 10 (2d Cir. 2015) ...........................................................................28

*Immuno AG. v. Moor-Jankowski,*
  77 N.Y.2d 235 (1991) ........................................................................................17

*Jee v. NY Post Co.,*
  176 Misc 2d 253 (Sup. Ct. N.Y. Cnty 1998) ..................................................20 *n.11*

*Johnson v. City of Newburgh,*
  690 F. Supp. 3d 224 (S.D.N.Y. 2023)..................................................................26

*Kalika v. Stern,*
   911 F. Supp. 594 (E.D.N.Y 1995) ........................................................................20

*Kamdem-Ouaffo v. PepsiCo, Inc.,*
   160 F. Supp. 3d 553 (S.D.N.Y 2016) ...................................................................9

*Kerik v. Tacopina,*
   64 F. Supp. 3d 542 (S.D.N.Y. 2014) ............................................................19, 20

*Kruger v. EMFT, LLC,*
   87 A.D.3d 717 (2d Dept. 2011) ...........................................................................21

*Law Debenture Tr. Co. v. Maverick Tube Corp.,*
   595 F.3d 458 (2d Cir. 2010) ........................................................................12 *n.7*

*Lombardo v. Seuss Enters., L.P.,*
   2017 U.S. Dist. LEXIS 64854 (S.D.N.Y. 2017) ..............................................1 *n.2*

*McKee v. Cosby,*
   586 U.S. 1172 (2019) ...........................................................................................19

*McKeefry v. Town of Bedford,*
   2019 U.S. Dist. LEXIS 207874 (S.D.N.Y. Dec. 2, 2019) ....................................28

*Micalizzi v. Ciamarra,*
   206 F. Supp. 2d 564 (S.D.N.Y. 2002) .................................................................17

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) .............................................................................................31

*Mitre Sports Intl. Ltd. v. HBO, Inc.,*
   22 F. Supp. 3d 240 (S.D.N.Y. 2014) .............................................................20 *n.11*

*Monell v. Dep't of Social Services,*
   436 U.S. 658 (1978) ...........................................................................26, 27, 28, 30

*Mora v. N.Y. State Unified Ct. Sys.,*
   No. 22-cv-10322 (VB), 2023 U.S. Dist. LEXIS 166411
   (S.D.N.Y. Sept. 19, 2023) ...................................................................................23

*Mumin v. City of N.Y.,*
   760 F. Supp. 3d 28 (S.D.N.Y. 2024) ...................................................................23

*Murphy v. Amer. Home Prods Corp.,*
   58 N.Y.2d 293 (1983) ..........................................................................................20

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) .............................................................................................19

*Novillo v Bd. of Educ.*,
    17 A.D.3d 907 (3d Dept. 2005) ...................................................................................8, 10

*Nuance Communs., Inc. v. IBM*,
    544 F. Supp. 3d 353 (S.D.N.Y. 2021)....................................................................13

*Ochei v. Mary Manning Walsh Nursing Home Co.*,
    2011 U.S. Dist. LEXIS 20542 (S.D.N.Y. Mar. 1, 2011) ..................................14, 25

*Oyler v. Boles*,
    368 U.S. 448 (1962).............................................................................................22

*Parris v. Acme Bus Corp.*,
    956 F. Supp. 2d 384 (E.D.N.Y 2012) .....................................................................15

*Pereira v. St. Joseph's Cemetery*,
    54 A.D.3d 835 (2d Dept. 2008) ...............................................................................21

*Perkins v. NYC Dept. of Correction*,
    887 F. Supp. 92 (S.D.N.Y. 1995) ...........................................................................26

*Picciano v. Nassau Cnty. Civ. Serv. Comm'n.*,
    290 A.D.2d 164 (2d Dept. 2001) .............................................................................6

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022)...........................................................18 *n.10*

*Rivera v. Baccarat, Inc.*,
    95 Civ. 9478 (MBM), U.S. Dist. LEXIS 6355 (S.D.N.Y. May 10, 1996) .............20

*Rivera v. Community Sch. Dist. Nine*,
    2002 U.S. Dist. LEXIS 12185 (S.D.N.Y. Jul. 1, 2002) ........................................24

*Rivera v. Time Warner Inc.*,
    56 A.D.3d 298 (1ˢᵗ Dept. 2008)..............................................................................18

*Rivera v. Westchester Cnty.*,
    488 F. Supp. 3d 70 (S.D.N.Y. 2020)......................................................................29

*Robles v. Cox & Co.*,
    841 F. Supp. 2d 615 (E.D.N.Y. 2012) ....................................................................21

*Rodriguez v. Dickard Widder Indus.*,
    150 A.D.3d 1169 (2d Dept. 2017) ..........................................................................22

*Rosenberg v. MetLife, Inc.*,
    8 N.Y.3d 359 (2007) ........................................................................................18, 19

*Russell v. Aid to Developmentally Disabled, Inc.*,
    753 F. App'x 9 (2d Cir. 2018) ..................................................................15

*Russo v. City of Bridgeport*,
    479 F.3d 196 (2d Cir. 2007)......................................................................31

*Sagaille v. Carrega*,
    194 A.D.3d 92 (1st Dept. 2021)................................................................18

*Sager v. County of Sullivan*,
    145 A.D.3d 1175 (3d Dept. 2016) ..............................................................6

*Savino v. City of New York*,
    331 F.3d 63 (2d Cir. 2003)........................................................................30

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir. 2006)......................................................................24

*Shultz v. Congregation Shearith Israel*,
    867 F. 3d 298 (2d Cir. 2017)......................................................................7

*Signa v. Corozin Health Insurance*,
    2018 U.S. Dist. LEXIS 3326 (E.D.N.Y. 2018)........................................14

*Spring v. County of Monroe*,
    169 A.D.3d 1385 (4th Dept. 2019) ......................................................18, 19

*Stern v. News Corp.*,
    2010 U.S. Dist. LEXIS 133119 (S.D.N.Y. Oct. 14, 2010) ......................16

*Sulehria v. City of N.Y.*,
    670 F. Supp. 2d 288 (S.D.N.Y. 2009)......................................................28

*Thompson v. City of N.Y.*,
    50 Misc 3d 1037 (Sup. Ct. Bronx Cnty 2015) ..............................30 *n.12*

*Triano v. Town of Harrison*,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012).......................................................29

*United States v. Sanchez*,
    517 F.3d 651 (2d Cir. 2008)......................................................................22

*Van Emrik v. Chemung County Dept. of Social Services*,
    911 F.2d 863 (2d Cir. 1990)......................................................................27

*Van Zant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996)..........................................................................8

22518217.v8-11/24/25

*Vilien v. Dep't of Educ. of the City of NY,*
    2009 U.S. Dist. LEXIS 274 (S.D.N.Y. 2009) ........................................................16

*Village of Willowbrook v. Olech,*
    528 U.S. 562 (2000) ..........................................................................................22

*Walsh v. Suffolk County Police Department,*
    No. 06-CV-2237 (JFB) (ETB), 2008 U.S. Dist. LEXIS 36465
    (E.D.N.Y. May 5, 2008) ....................................................................................25

*Weiss v. Vacca,*
    219 A.D.3d 1375 (2d Dept. 2023) .....................................................................22

*Whipple v. Reed Eye Assoc.,*
    524 F. Supp. 3d 76 (W.D.N.Y. 2021) ...............................................................16

*Young v. Goord,*
    No. 01 CV 0626 (JG), 2005 U.S. Dist. LEXIS 3641
    (E.D.N.Y. Mar. 10, 2005) ................................................................................32

**Statutes**

N.Y. C.L.S County § 52 ..........................................................................................6, 9

Gen. Constr. Law §66 ...............................................................................................6

Gen. Mun. Law § 50-e ..................................................................................6, 7, 8, 10

N.Y. Exec. Law § 296 ...................................................................................... *passim*

N.Y. Workers' Comp. Law § 25 ...........................................................................21, 22

## PRELIMINARY STATEMENT

Defendants Hudson Valley Community College ("HVCC" or "the College"), the HVCC Board of Trustees ("the Board"), and Neil J. Kelleher ("Mr. Kelleher") respectfully submit this memorandum of law in support of their partial motion to dismiss the September 23, 2025, Complaint ("the Complaint") of Plaintiff, Dr. Roger Ramsammy ("Dr. Ramsammy" or "Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiff asserts thirteen (13) causes of action arising from the termination of his employment from HVCC in June 2024.[1] Defendants seek to dismiss twelve of these claims in their entirety for failure to state a claim upon which relief may be granted.[2] For the reasons set forth more fully below, Defendants respectfully request that the Court dismiss Plaintiff's causes of action sounding in breach of contract, discrimination, defamation, negligent and intentional infliction of emotional distress, and various alleged constitutional violations brought under 42 U.S.C. §1983. As pled, these claims rest on conclusory assertions and duplicative theories, and are both legally and procedurally deficient, warranting dismissal as a matter of law.

## STATEMENT OF FACTS

### A. Plaintiff's Employment Agreement with HVCC

As pled in the Complaint, Dr. Ramsammy served as President of HVCC pursuant to a written employment agreement (the "Agreement") initially commencing July 1, 2018 (Complaint ¶1). The initial term was extended multiple times, with the most recent extension executed on or

---

[1]   The fourteenth cause of action appears to be mislabeled and should be listed as the thirteenth cause of action.

[2]   As addressed below, Defendants seek to dismiss Plaintiff's breach of contract claim insofar as Plaintiff alleges he was terminated "without proper prior notice or an opportunity to appear before the Board of Trustees." This argument relies on an erroneous reading of Section 4.1 of Plaintiff's employment contract and should be dismissed as a matter of law.  At this stage, Defendants do not request dismissal of Plaintiff's breach of contract claim insofar as Plaintiff alleges that HVCC did not have "Just Cause" to terminate his employment. Defendants reserve their right to respond to the remainder of the breach of contract claim in their answer, which is currently tolled under FRCP 12(a)(4)A). *Lombardo v. Seuss Enters., L.P.*, 2017 U.S. Dist. LEXIS 64854, *10 (S.D.N.Y. 2017).

about March 30, 2024, setting an "Extended Term" through August 30, 2029 (Complaint ¶26).[3] Section 4.1 of the Agreement authorized HVCC to terminate Plaintiff with sixty (60) days prior written notice for "Just Cause" (Ex. A ¶ 4.1). The Agreement authorized the Board to place Plaintiff on paid Administrative Leave during the sixty-day notice period (Ex. "A" ¶ 4.1). The Agreement provides a non-exhaustive list of examples of conduct that would constitute "Just Cause", including:

a) The refusal by the President to perform the employment duties reasonably required of the President as outlined in this Agreement;

b) The President's conviction of or a guilty plea to a felony whether or not relating to or affecting the College;

c) The President's conviction of a misdemeanor charge which directly results in a significant and detrimentally adverse affect on the College;

d) The commission of any act of dishonesty by the President, which relates to or affects the College; and

e) The refusal to follow, implement, or adhere to lawful procedures or directives established by the Board of Trustees of the State University of New York, the Commission of Education of the State of New York, the Board of Regents of the University of the State of New York or the Board.

f) Any other material breach of this Agreement as defined in Section 4.2(a).

(Ex. "A" ¶ 4.1(a)-(f)). Section 4.1 further provided additional protections to Dr. Ramsammy if the Board terminated him for reasons (a) (failure to perform his employment duties) or (f) (material breach):

A termination for "just Cause" **described in clauses (a) and (f)** in this Subsection 4.1 shall not be effective until the President has received sixty (60) days written notice of the proposed termination and the reasons therefore and has been granted, upon proper notice, the opportunity to appear before the Board, with legal counsel of his choosing and at his sole expense, to provide his arguments why the proposed termination is unwarranted and should not take place. If the Board should thereafter determine the termination is

---

[3]    A copy of the Fourth Amended and Restated Employment Agreement is attached as Exhibit "A" to the Complaint.

> unwarranted, the College shall reimburse the President for all
> reasonable attorney fees, costs and expenses incurred.

(Ex. "A" ¶ 4.1) (Emphasis added). Dr. Ramsammy was not entitled to these additional protections if he were terminated for any of the reasons set forth in clauses (b), (c), (d), or (e) of section 4.1. The Agreement further provides that if the President is terminated for Just Cause, he is not entitled to any salary or benefits following the effective termination date (Ex. "A" ¶ 4.6(a)).

### B. HVCC's Termination of Plaintiff

Plaintiff alleges that in April 2024 he and HVCC staff attended a conference in Louisville Kentucky, with his spouse accompanying him in her personal capacity (Complaint ¶¶ 39-40). He further alleges that following the trip, his executive assistant made allegations of sexual assault and harassment against him to HVCC's Director of Human Resources ("HR") (*Id.* at ¶¶ 57-58). Plaintiff contends he was orally advised of the existence of the complaint made by his assistant but not provided its contents (*Id.* at ¶¶ 59-60). He alleges that other officials discussed the allegations with trustees and faculty members (*Id.* at ¶61).

On May 15, 2024, the Board placed Plaintiff on paid administrative leave following receipt of the executive assistant's HR complaint and engaged outside counsel to conduct an independent investigation (Complaint ¶¶ 66-70). Plaintiff alleges that public media reported on his leave and on Defendant Kelleher's statements referencing adherence to college procedures (Complaint ¶¶ 68-70). On May 17, 2024, as part of the investigation, outside counsel interviewed Plaintiff and his spouse, wherein Plaintiff denied wrongdoing. (Complaint ¶¶ 72-74). On June 14, 2024, outside counsel conducted a second interview of Plaintiff surrounding the executive assistant's allegations and allegations by another HVCC female employee alleging sexual harassment against Plaintiff (Complaint ¶ 88).

On June 25, 2024, the Board voted to terminate Plaintiff's employment for Just Cause under Sections 4.1(d) and (e) of the Agreement (Complaint ¶ 92). That same day, Mr. Kelleher published a statement indicating that the College, "does not tolerate inappropriate behavior" and that the Board had followed established policies (Complaint ¶ 94). On June 26, 2024, the College issued a termination letter to Plaintiff, which notified him of his termination pursuant to Sections 4.1(d) and 4.1(e) of the Agreement, and that the termination would become effective in sixty (60) days, during which time he would be placed on administrative leave (Complaint ¶¶ 97-99).

The termination letter cited two grounds for Plaintiff's termination. The Board terminated Plaintiff based on Section 4.1(d), "due to the commission of acts of dishonesty related to or affecting the College," further noting, "you were not forthcoming and truthful regarding your relationship and conduct related to certain College employees under your supervision" (Complaint ¶ 98). The Board also terminated Plaintiff based on Section 4.1(e), noting that Plaintiff violated SUNY and College policies, including SUNY's policy on Sexual Harassment Response and Prevention and HVCC's Anti-Discrimination and Harassment Policy (Complaint ¶ 98). The letter further directed Plaintiff to return all College property by July 1, 2024, discontinued certain membership fee payments, and required Plaintiff to vacate College housing within thirty days (Complaint ¶¶ 101-103). Plaintiff alleges he first learned details of his termination through media reporting before receiving formal notice (Complaint ¶ 234).

On November 25, 2024, Plaintiff served a Notice of Claim alleging breach of contract, discrimination, defamation and unidentified constitutional violations (*Id*. at ¶20). He subsequently filed the current action on September 23, 2025, asserting thirteen causes of action, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, discrimination, defamation, negligent and intentional infliction of emotional distress, and various

due process and equal protection claims asserted under 42 U.S.C. §1983 (hereinafter, "Section 1983").

## <u>STANDARD OF REVIEW</u>

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544**,** 127 S. Ct. 1955 (2007), as amplified by *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), sets forth the standard applicable to a motion to dismiss a complaint under Rule 12(b)(6). Under the *Twombly* standard, to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. As the U.S. Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Most pertinent here is the Supreme Court's view that, while Rule 8 of the FRCP "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... *it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions*." *Iqbal*, 129 S. Ct. at 1950 (emphasis added).

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pled factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id*. The determination as to whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief'" as is required. *Id. quoting* Fed. R. Civ. P. 8(a)(2).

## ARGUMENT

### POINT I

### PLAINTIFF'S NOTICE OF CLAIM WAS UNTIMELY AND MANDATES DISMISSAL OF CERTAIN CLAIMS AS A MATTER OF LAW

As discussed in more detail below, apart from Plaintiff's breach of contract and implied covenant of good faith and fair dealing claims, Plaintiff's state-law claims must be dismissed because he failed to serve a timely notice of claim. HVCC is a "public corporation" within the meaning of the General Municipal Law ("GML"), and Plaintiff's pleading alleges HVCC is a department of the County of Rensselaer (Complaint ¶10; GML §50-e (*referencing* Gen. Constr. Law §66)). County Law § 52 provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature … must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law. The place of trial shall be in the county against which the action is brought. Gen. Mun. Law § 50-e (1)(a).

Accordingly, County Law § 52, together with GML §§ 50-e and 50-i, governs these claims. When compared to GML § 50-e, County Law § 52 applies to a much broader scope of matters, requiring a notice of claim for *any claim* against a county for damage or invasion of rights. N.Y. County Law § 52. Courts have expressly recognized this broader scope. *See, e.g., Sager v. County of Sullivan*, 145 A.D.3d 1175, 1176 (3d Dept. 2016) (explaining that County Law § 52 requires a notice of claim for "any claim" against a county); *see also Picciano v. Nassau Cnty. Civ. Serv. Comm'n.*, 290 A.D.2d 164, 170 (2d Dept. 2001) ("a cause of action under the Human Rights Law, while not a traditional tort, is subject to . . . County Law § 52."). As applied here, because HVCC is a

department of Rensselaer County, Plaintiff was required to serve a notice of claim upon the County for *each* of his state-law claims, other than his contractual claims.

GML § 50-e(1)(a) requires that the notice of claim be served within ninety (90) days after the claim accrues. GML § 50-i bars suit unless the plaintiff has served a timely notice of claim and commenced the action within the applicable limitations period.[4] Failure to comply with these statutory requirements mandates dismissal of the covered state-law claims. *Dayton v. City of Middletown*, 786 F. Supp. 2d 809, 825 (S.D.N.Y. 2011) (no court can grant an extension to serve a notice of claim that exceeds "one year and ninety days after the happening of the event upon which the claim is based.").

As alleged in the Complaint, Plaintiff served his notice of claim on November 25, 2024 (Complaint ¶ 20). However, the relevant accrual dates for the claims alleged in the Complaint demonstrate that each of the state-law claims accrued more than ninety days before November 25, 2024.

**A.** **The Court Should Dismiss the Third and Fourth Causes of Action for Discrimination Due to the Untimely Notice of Claim**

In the third and fourth causes of action of the Complaint, Plaintiff alleges that Defendants discriminated against him on the basis of his race/national origin and gender, respectively, in violation of the New York State Human Rights Law ("NYSHRL").

It is well settled that the limitations period for an employment discrimination suit accrues at "the time the [termination] decision was made and communicated to" the employee, even when the date of termination is later than the date of notification. *Shultz v. Congregation Shearith Israel*, 867 F. 3d 298, 305 (2d Cir. 2017) (finding "proper focus is upon the time of the discriminatory

---

[4]    The statute of limitations for a claim arising under GML § 50-I is one year and 90 days. Perhaps not coincidentally, Plaintiff filed his complaint on September 23, 2025, which is exactly 1 year and 90 days after the Board voted to terminate him.

acts, not upon the time at which the consequences of the acts became most painful"); *see also Chardon v. Fernandez*, 454 U.S. 6, 6 (1981) (a notice of termination was actionable at the point when "the operative decision was made — and notice given — in advance of a designated date on which employment terminated."). Therefore, timeliness of a discrimination claim is to be measured from the date the claimant had notice of the alleged discriminatory action. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 710 (2d Cir. 1996) (there is no reason to defer the accrual of a claim to the time claimant received notice of all discrete acts that might make up her discrimination claim). In *Novillo* the court found that oral notification of termination at a board meeting was sufficient to commence the statute of limitations when the determination was unambiguous and its effect certain. *Novillo v Bd. of Educ.*, 17 A.D.3d 907, 909 (3d Dept. 2005). The court ruled that the final vote of termination marked the point of finality, even before written confirmation was received. *Id*.

Here, Plaintiff's discrimination claims under the NYSHRL accrued when the Board voted to terminate him on June 25, 2024 (Complaint ¶ 92). Plaintiff alleges that the Board, "publicly voted to terminate Dr. Ramsammy" on June 25, 2024; that the Chair contemporaneously posted an official message on HVCC's public website announcing the termination "with cause"; and that media outlets published detailed reports the same evening (Complaint ¶¶ 90-97).[5] Consequently, service of a notice of claim with respect to such claims was required no later than September 23, 2024. GML § 50-e(1)(a). Because Plaintiff did not serve his notice of claim until November 25,

---

[5]   The accrual of these claims at the time of the decision is emphasized by the immediate impact the decision had insofar as the termination letter instructed Plaintiff: (1) he was on Administrative Leave through the effective date of the termination; (2) he was prohibited from contacting College students or employees; (3) he was required to vacate the Alumni House within thirty (30) days; (4) he had to return all College property within thirty (30) days; and (5) the College was no longer responsible for his membership to the Fort Orange Club. (Complaint ¶ 99-103).

2024, the Court should dismiss the third and fourth causes of action as a matter of law. *See Aponte v. Town of Islip*, 236 A.D.3d 424, 424 (1st Dept. 2025).

**B.  <u>The Court Should Dismiss the Fifth Cause of Action for Defamation Due to the Untimely Notice of Claim</u>**

Plaintiff's defamation claim accrued on the date of the first publication of the alleged defamatory statement(s). *Kamdem-Ouaffo v. PepsiCo, Inc.*, 160 F. Supp. 3d 553, 571 (S.D.N.Y 2016) ("any action for defamation accrue[s] when the alleged statements [are] first published."). The Complaint identifies allegedly defamatory statements were made on June 25, 2024, when Mr. Kelleher posted the "with cause" statement on HVCC's website, and again when subsequent media reporting on July 22–23, 2024, stated "[t]his means that Ramsammy lied during his time as president" (Complaint ¶¶ 245-247).[6]

Under New York's single-publication rule, each distinct publication accrues on its publication date, irrespective of when the plaintiff discovers such statements. *Kamdem-Ouaffo,* 160 F. Supp. 3d at 57; *see also Gibson v, SCE Group, Inc.*, 391 F. Supp. 3d 228, 252 (S.D.N.Y. 2019) (same). Therefore, the window to serve a notice of claim closed, for the July publication, on or around October 20, 2024. Accordingly, notice was untimely as to both publications.

**C.  <u>The Court Should Dismiss the Ninth and Tenth Causes of Action for Intentional and Negligent Emotional Distress Due to the Untimely Notice of Claim</u>**

Plaintiff's ninth and tenth causes of action for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") also accrued no later than June 25, 2024. The Complaint alleges emotional distress flowing from the failure to follow proper

---

[6]  The notice of claim requirements not only apply to HVCC and its Board of Trustees, but also to any claims brought against individual representatives of the College such as Defendant Kelleher who issued these statements in his capacity as President of the Board of Trustees. *See* N.Y County Law § 52 ("Any claim or notice of claim against a county for damage … alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, **its officers, agents, servants or employees**, must be made and served in compliance with section fifty-e of the general municipal law.") (emphasis added).

termination procedure, the public termination decision, the contemporaneous public statement on HVCC's website, and the immediate media coverage that same day (Complaint ¶¶228-238, 243-253). Those are discrete acts that would trigger accrual upon the date of the alleged acts. *Burrell v. City Univ. of NY*, 995 F. Supp. 398, 416 (S.D.N.Y. 1998). With respect to the date on which Plaintiff was allegedly improperly "publicly discharged" (Complaint ¶¶243-244) such claim irrefutably accrued on the date on which the act occurred. *Id*. With respect to the allegation that the publication or dissemination of information caused such distress (Complaint ¶¶245-251) those claims accrued on the date of publication. *Id*. Even if one looked to the latest publication date, the July 22–23, 2024, media article as a distinct act contributing to emotional distress, the latest 90-day deadline for service of a notice of claim would have been October 20, 2024.

None of Plaintiff's allegations save his untimely notice. Plaintiff's assertion that the November 25, 2024, notice was "within ninety (90) days after the claims arose" is contradicted by his own chronology (Complaint ¶20). Plaintiff's claims are barred as a matter of law and must be dismissed with prejudice. *Dayton*, 786 F. Supp. 2d at 825.

**D.** **The Court Should Dismiss the Fourteenth Cause of Action for Violation of Due Process Under the New York State Constitution Due to the Untimely Notice of Claim**

Plaintiff's due process claim under Article I, § 6 of the New York State constitution likewise accrued on June 25, 2024, when the Board publicly voted to terminate Plaintiff, publicized the basis for the termination, and allegedly failed to provide Plaintiff with a name-clearing hearing (Complaint ¶¶280-287). As noted above, the accrual of claims occurs when the determination is made and communicated, not when it later takes effect. *Novillo*, 17 A.D.3d at 909. The Complaint repeatedly ties the asserted constitutional deprivation to the June 25, 2024, decision and public vote (Complaint ¶¶280-287). The 90-day deadline under GML § 50-e therefore expired on or around September 23, 2024, rendering the November 25, 2024, notice untimely. As New York

courts require compliance with notice of claim provisions for any claim "of every name and nature," dismissal is required where, as here, the notice was not served within 90 days of accrual. *Anderson v. Nassau County Dept. of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008).

**POINT II**

**PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE PARTIALLY DISMISSED FOR FAILURE TO STATE A CLAIM**

The first cause of action for breach of contract is two pronged. Plaintiff alleges that HVCC breached the Agreement by: (1) terminating Plaintiff "without proper prior notice or an opportunity to appear before the Board of Trustees" and (2) by erroneously determining "just cause" for Plaintiff's termination (Complaint ¶¶118-120). Defendants move to dismiss on the first basis, as such claim fails as a matter of law.

The first prong of Plaintiff's breach of contract claim relies on Section 4.1 which states, in pertinent part:

> A termination for "Just Cause" **described in clauses (a) and (f)** in this Subsection 4.1 shall not be effective until the President has received sixty (60) days written notice of the proposed termination and the reasons therefore and has been granted, upon proper notice, the opportunity to appear before the Board, with legal counsel of his choosing and at his sole expense, to provide his arguments why the proposed termination is unwarranted and should not take place.

(Complaint ¶ 108; Ex. "A" ¶ 4.1) (emphasis added). Plaintiff alleges that the College breached the Agreement by not providing him with an opportunity to appear before the Board and provide arguments as to why the proposed termination is unwarranted (Complaint ¶¶ 115, 118).

As explicitly stated in the Agreement, the opportunity to meet with the Board only arises if the proposed termination is based on 4.1(a) (the refusal of the President to perform the employment duties reasonably required of the President as outlined in the Agreement) or 4.1(f) any other material breach of the Agreement as defined in Section 4.2(a)). The Board, however,

11

expressly terminated Plaintiff pursuant to Section 4.1(d) and 4.1(e) (*see* Complaint ¶¶ 93, 97-98). Neither of those sections provide Plaintiff with a contractual right to meet with the Board prior to the termination becoming effective (*see* Ex. "A" ¶ 4.1).

The Agreement must be interpreted and enforced based on its plain language.[7] *Argonaut Ins. Co. v. City of Troy*, No. 1:19-CV-1247 TJM/CFH, 2020 U.S. Dist. LEXIS 68664, *17 (N.D.N.Y. Apr. 20, 2020) ([w]hen a contract "on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity"); *Beardslee v. Inflection Energy, LLC*, 904 F. Supp. 2d 213, 219 (N.D.N.Y. 2012) ("[T]he best evidence of intent is the contract itself . . .it must be enforced according to the plain meaning of its terms."). Based on the foregoing, Plaintiff's claim for breach of contract—insofar as it is premised on the alleged failure of Defendants to provide Plaintiff with an opportunity to address the Board—must be dismissed.

## POINT III

## THE SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED AS DUPLICATIVE AND CONTRADICTORY

In the second cause of action of his Complaint, Plaintiff alleges a separate claim for breach of the implied covenant of good faith and fair dealing (Complaint ¶¶122–132). This claim should be dismissed because it is duplicative of the contract claim and contradictory to the Agreement's express language.

---

[7] Plaintiff alleges that HVCC's in-house legal counsel told him that he would get a chance to speak about the allegations, which Plaintiff, "understood meant that he would get an opportunity to speak before the HVCC Board of Trustees about the allegations to defend himself" (Complaint ¶ 127). This allegation does not create a new contractual obligation because the Agreement's integration clause forecloses such an argument (*see* Ex. "A" ¶ 14). To that end, parole evidence cannot vary or add to such a fully integrated contract. *Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010).

An implied-covenant claim is not independent when it arises from the same facts and seeks the same damages as a breach-of-contract claim. *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015); *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). Here, both claims challenge the same alleged failure to provide a pre-termination opportunity to be heard. The implied-covenant claim adds nothing to the claim for breach of contract and should be dismissed as redundant.

Even if distinct, the claim fails because the implied covenant "cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Nuance Communs., Inc. v. IBM*, 544 F. Supp. 3d 353, 372 (S.D.N.Y. 2021); *see also Fesseha v. TD Waterhouse Inv. Servs.*, 305 A.D.2d 268, 268 (1st Dept. 2003).

As discussed above, the Agreement expressly confines the pre-termination procedure to Sections 4.1(a) and (f) and includes an integration clause prohibiting unwritten modifications. Imposing those procedures on terminations under (d) or (e) would rewrite the contract and contradict its plain text. As HVCC merely exercised its contractual right to terminate under Sections 4.1(d) and 4.1(e), its actions cannot, as a matter of law, breach the covenant of good faith and fair dealing. The Court should dismiss the second cause of action on this basis.

## POINT IV

### THE THIRD AND FOURTH CAUSES OF ACTION FOR DISCRIMINATION SHOULD BE DISMISSED BASED ON PLAINTIFF'S FAILURE TO STATE A CLAIM

Even if Plaintiff had served a timely notice of claim, the third and fourth causes of action for discrimination under the NYSHRL should be dismissed for his failure to state a cause of action with respect to either claim. To state a claim for discrimination under the NYSHRL, a plaintiff must allege: "(1) membership in a protected class; (2) qualification for, and satisfactory performance in, the job at issue; and (3) an adverse employment action, occurring under (4)

circumstances giving rise to an inference of discrimination." *Canady v. Union 1199*, 253 F. Supp. 3d 547, 554 (W.D.N.Y. 2017) (*citing* Collins v. New York City Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002)). Courts reject the notion that membership in a protected class plus an adverse action equals discrimination absent facts linking the decision to a protected characteristic. *See Ochei v. Mary Manning Walsh Nursing Home Co.*, 2011 U.S. Dist. LEXIS 20542, *3 (S.D.N.Y. Mar. 1, 2011).

*First*, the allegations of discrimination in Plaintiff's Complaint are threadbare and lack any level of specificity to establish, even at the liberal pleading stage, a plausible inference of discrimination necessary to advance his claims. Rather, Plaintiff simply alleges he is a black male of African, Latino and Indian descent (Complaint ¶¶8, 9); that claims of impropriety made against him were by White individuals of different ethnicities than Plaintiff (Complaint ¶137); and that the individuals who alleged such improprieties were female (Complaint ¶153, 193). Plaintiff fails to relate any of these facts to HVCC's decision to terminate him. In essence, Plaintiff's allegations of discrimination amount to nothing more than a "false syllogism" that because Plaintiff belongs to some protected group and suffered an adverse employment action, he must have been the victim of discrimination. This is patently insufficient to state a claim. *Ochei*, 2011 WL 744738, at *3. Absent some demonstrated causal connection between a defendant's alleged adverse employment action and the plaintiff's protected characteristics, a plaintiff's claims must fail. *Id*.[8]

*Second*, Plaintiff's claims of discrimination are largely premised on allegations that are pled "upon information and belief" (s*ee, e.g.,* Complaint ¶¶ 137, 138, 197, 198). Under the pleading standards of *Ashcroft v. Iqbal* and its progeny, allegations based "upon information and

---

[8]    *See, e.g., DuBois v. Brookdale Hospital and Medical Center,* 29 A.D.3d 731, 731-32 (2d Dept. 2006) (affirming motion to dismiss age, race and national origin causes of action that were based upon conclusory allegations); *Clarson v. City of Long Beach,* 132 A.D.3d 799 (2d Dept. 2015) (granting CPLR § 3211 motion where plaintiff simply alleged that she was an Asian-American woman who was terminated and replaced with a white male).

belief" are insufficient to state a viable cause of action unless they are accompanied by a statement as to the basis for the belief. *See, e.g.*, *Signa v. Corozin Health Insurance*, 2018 U.S. Dist. LEXIS 3326 (E.D.N.Y. 2018) ("Alleging something 'upon information and belief' does not suffice to allege a fact under *Iqbal* and *Twombly* unless plaintiff can point to some facts that make the allegations more than pure speculation"). Plaintiff has failed to plead facts to support his allegations which are pled upon information and belief. His claims of discrimination should be dismissed on this additional basis.

*Third*, Plaintiff identifies no similarly situated comparator. To support an inference of discrimination under the NYSHRL, a plaintiff must identify comparators who are "similarly situated in all material respects" and who were treated more favorably by the same decisionmakers. *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 13 (2d Cir. 2018). Here, there is no other individual accused of materially similar misconduct who was treated differently by the same Board. Rather, Plaintiff asserts: (1) HVCC "treated Complainant and Plaintiff inconsistently … the accusers' accusations were believed and Plaintiff's denials were rejected" (Complaint ¶265); (2) "similarly situated individuals of different races … or genders have received more favorable treatment in comparable circumstances" (Complaint ¶197); and (3) there were similarly situated employees accused of misconduct who were afforded notice, and opportunity to respond (Complaint ¶198).

As an initial matter, the individuals who accused Plaintiff of harassment are not appropriate comparators as they were not disciplined for engaging in similar conduct. *Parris v. Acme Bus Corp.*, 956 F. Supp. 2d 384, 394 (E.D.N.Y 2012) (requiring a "reasonably close resemblance of facts and circumstances" between plaintiff and her colleagues who escaped the purported discriminatory treatment). With respect to those who may have received more favorable treatment,

Plaintiff simply speaks of these comparators in conclusory terms without providing any factual support or identifying a single "similarly situated" individual. Plaintiff also fails to describe the misconduct in which these unidentified "similarly situated" employees engaged that was materially similar to the conduct ascribed to Dr. Ramsammy. Finally, Plaintiff does not allege that the same decision-makers were involved in these purportedly more favorable decisions for the alleged comparators. In the absence of any facts to support these threadbare allegations, Plaintiff's claims of discrimination should be dismissed.

Plaintiff's discrimination claims fail for the additional reason that the same individuals who allegedly terminated his employment are the very ones he concedes extended his contract as recently as March 30, 2024 (Complaint ¶28). Under the well-established "same-actor inference" where the same decisionmakers both hire and later discharge an employee, within a short period of time, it is implausible to infer discriminatory intent. *Buon v. Spindler*, 65 F.4th 64, 84 (2d Cir. 2023); *Whipple v. Reed Eye Assoc.*, 524 F. Supp. 3d 76, 99 (W.D.N.Y. 2021) (unlikely to develop discriminatory animus soon after displaying favorable disposition). Dr. Ramsammy was terminated on June 26, 2024, a scant **three months** after the Board extended his contract, which was then set to expire effective August 30, 2026, for an additional three years through August 29, 2029. (Complaint ¶¶ 24-28). This fact alone negates any inference that the Board's termination decision was motivated by bias rather than a legitimate non-discriminatory reason.

<u>POINT V</u>

<u>THE FIFTH CAUSE OF ACTION FOR DEFAMATION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM</u>

The fifth cause of action in the Complaint asserts a claim for defamation as against all Defendants. To state a claim for defamation, Plaintiff must allege a false, defamatory statement of fact "published without privilege or authorization to a third party, constituting fault … [and] either

caus[ing] special harm or constitut[ing] [defamation] per se." *See Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001); *Vilien v. Dep't of Educ. of the City of NY*, 2009 U.S. Dist. LEXIS 274 (S.D.N.Y. Mar. 31, 2009). Truth or substantial truth is a complete defense. *Stern v. News Corp.*, 2010 U.S. Dist. LEXIS 133119, *14 (S.D.N.Y. Oct. 14, 2010). Courts take account of "the full context of challenged speech," favoring robust public discussion, particularly on matters of public interest. *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 255 (1991).

A. **The Complaint Fails to Plead a False Statement and any Allegedly Defamatory Statements Are Protected Expressions of Opinion**

Plaintiff's defamation claim is premised on a June 25, 2024, website statement by Defendant Neil Kelleher (Chair of the HVCC Board of Trustees), which is alleged in the Complaint to state as follows:

> The HVCC Board of Trustees 'voted to terminate, with cause, its contract with Dr. Roger Ramsammy,' and that 'the Board wishes to send a strong message that Hudson Valley does not tolerate inappropriate behavior by any [sic] or toward any member of the college community. (alteration in original).

(Complaint ¶ 164). As pled, these statements are either substantively true or constitute unactionable opinion.

With respect to the statement regarding the termination of Plaintiff for cause, because the challenged words accurately reflect events Plaintiff admits have occurred, the truth defense bars the claim. *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 583-84 (S.D.N.Y. 2002) (truth complete defense where statement accurately described official action taken).[9] In addition, with respect to Mr. Kelleher's statement that the board does not tolerate inappropriate behavior – Courts have repeatedly held that criticism of job performance constitutes protected opinion that cannot support

---

[9]  Plaintiff's attack on Mr. Kelleher's assertion that the Board followed its procedures (Complaint ¶ 165) rings hollow, as it is premised on Plaintiff's mischaracterization of the plain language of the employment agreement. *See supra* at p. 2.

a defamation claim. *See, e.g., Galanova v. Safir*, 138 A.D.3d 686, 687 (2d Dept. 2016) (holding that "two emails alleged to be defamatory amounted to subjective characterizations of the plaintiff's behavior and an evaluation of her performance as a member of the Board, and thus constituted non-actionable expressions of opinion").

**B. <u>Mr. Kelleher's Statements are Protected by Qualified Privilege</u>**

Plaintiff's defamation claim is also subject to dismissal because Mr. Kelleher's statements—made in his capacity as President of the Board of Trustees—addressed a personnel matter that is subject to a qualified privilege.

In that regard, communications made by a public official "in the discharge of some public … duty" are presumptively privileged. *See Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007); *see also Spring v. County of Monroe*, 169 A.D.3d 1385, 1386 (4th Dept. 2019) (communications by public officials to inform the public about official business are privileged). To overcome qualified privilege, a plaintiff must plead facts showing the defendant acted out of personal spite or ill will, or with a high degree of awareness of probable falsity; conclusory allegations of malice are insufficient. *Sagaille v. Carrega*, 194 A.D.3d 92, 95 (1st Dept. 2021).

A "triable issue is raised only if a jury could reasonably conclude that 'malice was the one and only cause for the publication.'" *Curren v. Carbonic Sys., Inc.*, 58 A.D.3d 1104, 1107 (3d Dept. 2009). "Actual malice cannot be inferred from factual allegations merely suggesting that [defendant] had reason to question the accuracy of the information at issue. This asserts, at most, a negligence theory that falls far short of the requisite actual malice standard." *Rivera v. Time Warner Inc.*, 56 A.D.3d 298 (1st Dept. 2008). Significantly, courts routinely reject the argument "that a motion to dismiss cannot be granted on the ground of actual malice because it is an issue

of fact." *Carey v. Carey*, 220 A.D.3d 477, 479 (1st Dept. 2023).[10] Accordingly, absent sufficient factual allegations from which malice can be inferred, qualified privilege cannot be overcome, and a defamation claim must be dismissed on a motion to dismiss.

Here, Plaintiff fails to sufficiently plead malice. The Complaint's malice allegations are purely conclusory—failing to assert a single supporting fact that, if true, would show personal spite, knowledge of falsity, or high-degree awareness of probable falsity by Mr. Kelleher at the time of publication (Complaint. ¶¶163, 171–174). In fact, Plaintiff fails to show that Mr. Kelleher did anything other than discharge his responsibility to keep the public informed regarding a sensitive issue. *Spring*, 169 A.D.3d at 1386. Plaintiff himself acknowledges that Human Resources received an employee complaint, the Board placed Plaintiff on paid administrative leave, an outside investigator was engaged, the Board convened and voted, and a termination letter citing termination for cause was issued (Complaint ¶¶ 66–79, 92–101). Against that backdrop, a brief public statement by the Board Chair noting what the Board did and articulating the Board's general policy position is the quintessential communication "fairly made … in the discharge of [a] public … duty," triggering the qualified privilege. *Rosenberg*, 8 N.Y.3d at 365. Far from plausibly alleging that Mr. Kelleher knew his statements were false or entertained serious doubts about their truth, the Complaint pleads a sequence of official steps and media interest that confirm the reasonableness—and privilege—of speaking to the public. *See Spring*, 169 A.D.3d at 1386.

### C. <u>Plaintiff Is a Public Figure and Fails to Plead Actual Malice.</u>

Where, as here, Plaintiff is a public figure and the statements concern his performance of official duties, he must plead and ultimately prove actual malice. *New York Times Co. v. Sullivan*,

---

[10]    *See, e.g.*, *Prince v. Intercept*, 634 F. Supp. 3d 114, 139 (S.D.N.Y. 2022) (dismissing defamation claim for failure to plausibly allege actual malice); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (same); *Hame v. Lawson*, 70 A.D.3d 640, 641 (2d Dept. 2010) (same).

376 U.S. 254 (1964); *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 571 (S.D.N.Y. 2014) ([a] public figure may not recover for defamation absent proof of "actual malice."); *see also McKee v. Cosby*, 586 U.S. 1172, 1175 (2019) (same). Further, a defendant must know of falsity or have "entertained serious [subjective] doubts as to the truth of his publication." *Kerik,* 64 F. Supp. 3d at 571. Here, Plaintiff was unquestionably a public figure in his role as president of HVCC.[11] For the same reasons outlined in the foregoing section, Plaintiff fails to plead actual malice. Accordingly, Plaintiff's defamation claim as against all defendants must be dismissed.

### POINT VI

### THE NINTH AND TENTH CAUSES OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

The ninth cause of action in Plaintiff's Complaint alleges a common law claim of IIED. To state a legally sufficient claim, Plaintiff must plead sufficient facts to demonstrate that Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized [society]." *Kalika v. Stern*, 911 F. Supp. 594. 605 (E.D.N.Y. 1995); *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350 (1993); *Murphy v. Amer. Home Prods Corp.*, 58 N.Y.2d 293, 303 (1983). This standard is repeatedly described in New York law as a high pleading burden. *Murphy*, 58 N.Y. 2d at 303 ("facts alleged fall far short"); *Rivera v. Baccarat, Inc.*, 95 Civ. 9478 (MBM), U.S. Dist. LEXIS 6355 (S.D.N.Y., May 10, 1996) (dismissal on the pleadings for failure

---

[11]   *Mitre Sports Intl. Ltd. v. HBO, Inc.*, 22 F. Supp. 3d 240, 249 (S.D.N.Y. 2014) (A public figure is one who "ha[s] assumed [a] role[] of special prominence in the affairs of society."); *Jee v. NY Post Co.*, 176 Misc 2d 253, 253 (Sup. Ct. N.Y. Cnty 1998) (finding that public school principals are public officials for the purposes of the defamation law as the importance of education to society and the legitimate concern that the public has in seeing that the educational process is properly administered cannot be disputed and public-school principals play an important role in shaping and administering the educational process).

to meet the high standard). The Court of Appeals has even noted that "every one" of the "intentional infliction of emotional distress claims considered by this Court … has failed because the alleged conduct was insufficiently outrageous." *Howell*, 81 N.Y.2d at 112; *see Fahmy v. Duane Reade*, 2005 WL 2338711 (S.D.N.Y. 2005) (satisfying the outrageousness element is "difficult, even at the pleadings stage").

Here, Plaintiff's claims, arising in the employment context, do not meet this exacting standard (Complaint ¶¶ 228-238, 243-253 (alleging IIED on account of e.g. improper termination, public statements made)). *See*, *e.g Robles v. Cox & Co*., 841 F. Supp. 2d 615, 620 (E.D.N.Y. 2012) (holding that acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of IIED because the conduct alleged is not sufficiently outrageous); *Como v. Riley*, 287 A.D.2d 416, 417 (1st Dept. 2001) (finding purportedly defamatory publication accusing plaintiff of racism was not sufficiently outrageous to support IIED claim); *see also Greene v. Trustees of Columbia University*, 234 F. Supp. 2d 368, 383 (S.D.N.Y. 2002). Plaintiff's allegations, even if true, fall far short of establishing any degree of outrageousness, let alone the degree required to satisfy IIED. Accordingly, the ninth cause of action must be dismissed on this basis.

B.  **Plaintiff's Negligent Infliction of Emotional Distress Claim Is Barred by The New York State Workers' Compensation Law and Otherwise Fails to State a Claim**

The tenth cause of action in the Complaint alleges a claim for negligent infliction of emotional distress ("NIED"). This claim, however, is barred by the exclusivity provision of the New York Workers' Compensation Law ("WCL") which provides, "[t]he right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his or her dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ …." N.Y. Workers' Comp. Law § 29(6).

21

This exclusivity provision is routinely applied by courts to bar claims by employees who seek damages for unintentional injuries incurred in the course of employment. *See Pereira v. St. Joseph's Cemetery,* 54 A.D.3d 835, 836 (2d Dept. 2008); *Kruger v. EMFT, LLC*, 87 A.D.3d 717, 719 (2d Dept. 2011) (holding that proposed cause of action to recover damages under theory of negligent infliction of emotional distress is barred by the WCL); *see also Rodriguez v. Dickard Widder Indus.*, 150 A.D.3d 1169, 1171 (2d Dept. 2017) (finding that former employee's common-law NIED action was barred by the exclusivity provisions of the WCL). The application of the exclusivity provision necessitates dismissal of the tenth cause of action.

In any event, an NIED cause of action is generally limited to cases where "defendants' conduct unreasonably endangered plaintiffs' physical safety, or … that untruthful information regarding death was transmitted or that a corpse was negligently handled." *See Weiss v. Vacca*, 219 A.D.3d 1375, 1377 (2d Dept. 2023). Nothing in the Complaint would indicate that any conduct related to Plaintiff's termination fell remotely within one of these categories. Accordingly, dismissal of this claim is appropriate on this additional basis.

## POINT VII

### THE SEVENTH CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

In the seventh cause of action of the Complaint, Plaintiff asserts an alleged violation of the Equal Protection Clause (Complaint, ¶¶190-204). The Equal Protection Clause prohibits any difference in treatment based on impermissible considerations, such as the race of the plaintiff. *See United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008), citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962). The essential guarantee of equal protection under the laws is that all persons similarly situated be treated alike. Accordingly, to support a claim for denial of equal protection, Plaintiff must demonstrate that he was similarly situated to others who received preferential treatment.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff, however, cannot make this showing.

The allegations in support of Plaintiff's Equal Protection claim are legally insufficient for the same reasons that his claims of discrimination should be dismissed—he has failed to allege facts to demonstrate that similarly situated individuals were treated more favorably by the same decisionmaker (i.e., the Board of Trustees). Rather, in support of this claim, Plaintiff alleges that the underlying complaints that resulted in his termination were made by white female employees (Complaint ¶¶191, 193), and that HVCC decided to "credit the white and female accusers' allegations of [his] denials" and that this decision was "motivated, in whole or in part, by a discriminatory animus and bias against Dr. Ramsammy based on his race, national origin, ethnicity and gender" (Complaint ¶196). Finally, Plaintiff alleges, "upon information and belief" that "similarly situated individuals of different races, national origins, ethnicities, or genders have received more favorable treatment in comparable circumstances" (Complaint ¶197). Plaintiff, however, does not provide any factual allegations to support this contention. *See* discussion *supra* at Point IV.

These conclusory allegations, on their face, are legally insufficient to state a plausible claim for violation of the Equal Protection Clause and should result in dismissal of the claim. *See Mora v. N.Y. State Unified Ct. Sys.,* No. 22-cv-10322 (VB), 2023 U.S. Dist. LEXIS 166411, at *14 (S.D.N.Y. Sept. 19, 2023) (dismissing equal protection claim where plaintiff did not adequately identify any similarly situated individual whom defendants treated differently); *Mumin v. City of N.Y.,* 760 F. Supp. 3d 28, 63 (S.D.N.Y. 2024) (same); *Conde v. Mid Hudson Regional Hosp. Med. Ctr.*, No. 22-cv-03085 (VB), 2024 U.S. Dist. LEXIS 8658, at *5 (S.D.N.Y. Jan. 12, 2024) (same). Accordingly, the Court should dismiss Plaintiff's seventh cause of action on this basis.

<u>POINT VIII</u>

<u>PLAINTIFF'S DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW</u>

**A.** <u>The Availability of an Adequate Post-Deprivation Remedy Defeats Plaintiff's Stigma Plus Claim</u>

In the sixth cause of action in the Complaint, Plaintiff asserts a "stigma plus" claim in which Plaintiff alleges, in pertinent part, that he was "not provided with any process by which he could have cleared his name and restored his good reputation" (Complaint ¶185). Plaintiff's stigma plus claim must be dismissed because New York law affords him an adequate post-deprivation remedy through Article 78 of the New York Civil Practice Law and Rules.

The Second Circuit has recognized that "not every wrong committed at the hands of the government is cognizable as a constitutional violation*." Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006). When it comes to alleged "stigma-plus" claims, a plaintiff must also show that he/she had no adequate post-deprivation remedy. As stated by the Second Circuit:

> Because stigma plus is a species within the phylum of procedural due process claims, however, it is not enough that the plaintiff has demonstrated the deprivation of her liberty interest; in order to bring a successful stigma-plus claim, the plaintiff must also demonstrate that her liberty interest was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim. *Id*. at 213 (emphasis added); *see also Caselaw Supra.*

Here, the thrust of Plaintiff's claim is that the disclosure of allegedly stigmatizing information concerning Plaintiff's misconduct, without an opportunity to clear his name, or "any procedural mechanism to rebut the allegations" constitutes a violation of his constitutional rights (Complaint ¶¶175-188). As noted above, Plaintiff had an adequate procedural mechanism for name clearing through an Article 78 proceeding. *See, e.g., Rivera v. Community Sch. Dist. Nine*, 2002 U.S. Dist. LEXIS 12185 *7 (S.D.N.Y. Jul. 1, 2002) (collecting cases) (granting (12)(b)(6) motion dismissing "stigma-plus" claims and finding that plaintiff did not suffer a deprivation of her due

process rights, despite the fact that the alleged defamatory conduct implicated plaintiff's liberty interests, because she could have requested a name-clearing hearing through an Article 78 proceeding); *Walsh v. Suffolk County Police Department*, No. 06-CV-2237 (JFB) (ETB), 2008 U.S. Dist. LEXIS 36465, *13-15 (E.D.N.Y. May 5, 2008) (no due process claim arising out of the publication of stigmatizing statements because Article 78 proceeding is an adequate post-deprivation procedure and they frequently function as name-clearing hearings).

As in *Walsh*, Plaintiff's "due process claim is not cognizable … because of an adequate remedy in the form of an Article 78 proceeding for any such deprivation." *Id*. at *14; *see also Federico v. Public Schools of the Tarrytowns*, 955 F. Supp. 194 (S.D.N.Y. 1997) (stigmatizing statements by school board members about teacher did not give rise to due process claim because of availability of Article 78 proceeding). Plaintiff's stigma plus claim should be dismissed on this basis.

## B. <u>The Availability of a Proceeding Under Article 78 of the CPLR Bars Plaintiff's Federal and State Due Process Claims</u>

Plaintiff's eighth and fourteenth causes of action—alleging that HVCC violated his right to due process under federal and state law (Complaint ¶¶ 205-227, 278-288)—must likewise be dismissed because of the post-deprivation remedy available under Article 78 of the New York Civil Practice Law and Rules ("CPLR"). *See, e.g.*, *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 880, 882 (2d Cir. 1996), *cert. denied*, 521 U.S. 1140 (1997) (dismissing § 1983 claim because Article 78 provides a "perfectly adequate post deprivation remedy; because of the availability of an Article 78 proceeding, [plaintiff] was not deprived of such property or liberty without due process of law"); *see also Clark v. Dominique*, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) (finding no due process violation with respect to plaintiff's state and federal due process claims because New York provides a meaningful post deprivation remedy).

25

The availability of an Article 78 proceeding, and Plaintiff's failure to seek relief through that procedure, is fatal to Plaintiff's due process claims. *See Clark* at 401. "[I]t matters not whether a plaintiff actually avails [him]self of the state court post-deprivation process. So long as that process is available, a due process claim must be dismissed." *Id.* Here, because Plaintiff failed to avail himself of an Article 78 proceeding, he does not have a procedural due process claim under state or federal law.

**POINT IX**

**PLAINTIFF'S MONELL CLAIMS FAIL FOR INSUFFICIENT PLEADING**

Assuming, *arguendo*, Plaintiff's constitutional claims asserted under Section 1983 could otherwise survive, they must still be dismissed as against the Board and HVCC, as Plaintiff failed to adequately plead *Monell* liability. As a matter of law, municipalities cannot be held liable under Section 1983 on a theory of respondent superior. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 847 (2d Dept. 2011) (a municipal entity is not liable under 42 USC § 1983 for an injury inflicted solely by its employees or agents). To hold a municipality liable in a Section 1983 action, "a plaintiff is required to plead and prove: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Holden v. Port Auth. of NY & New Jersey*, 521 F. Supp. 3d 415, 426 (S.D.N.Y. 2021);  *see also Perkins v. NYC Dept. of Correction*, 887 F. Supp. 92 (S.D.N.Y. 1995) (because respondeat superior is not available under claims brought pursuant to Section 1983, "a Plaintiff must plead and prove a municipal policy and custom which caused an alleged constitutional violation"); *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 233 (S.D.N.Y. 2023).

Here, Plaintiff asserts two *Monell* theories against HVCC (i) failure to train in the Eleventh Cause of Action; and (ii) an unconstitutional policy or practice in the Twelfth Cause of Action

26

(Complaint ¶¶258-270, 271-277). Both are inadequately pled under the governing plausibility standard and must be dismissed.

**A.**  **Plaintiff Fails to State a *Monell* Claim Under Policy or Practice**

Plaintiff's "unconstitutional policy or practice" claim relies on the contention that HVCC "maintained a custom or policy" of publicly disseminating stigmatizing allegations in connection with termination decisions without notice or a name-clearing hearing, causing Plaintiff's claimed due process injuries (Complaint ¶¶272, 276). Those allegations are not supported by well-pled facts. Under *Monell*, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." *Monell*, 436 U.S. at 694.

*First*, the Complaint does not identify a formal policy. Plaintiff does not quote, attach, or even describe any written policy, directive, bylaw, or rule that mandates the challenged conduct. To the contrary, Plaintiff repeatedly invokes "custom or policy" in the alternative and in purely conclusory terms (Complaint ¶¶272-274). Plaintiff's attempt to bridge this gap by asserting that HVCC's public handling of his termination was "consistent with prior instances" is precisely the sort of threadbare, conclusory allegation that is not entitled to the presumption of truth (Complaint ¶275). *Monell* requires more than labels; it requires facts showing that an official policy existed and caused the alleged violation. *Van Emrik v. Chemung County Dept. of Social Services*, 911 F.2d 863, 868 (2d Cir. 1990) (claim against County dismissed when plaintiff failed to adequately allege any custom or policy that County contributed to denial of plaintiff's constitutional rights); *Claudio v. City of New York*, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006) ("No practices of the City of New

York are even mentioned in the instant Complaint, and even conclusory allegations of official custom or practice will fail to survive a motion to dismiss").

*Second*, to the extent Plaintiff meant to allege an unwritten "custom or practice," the pleading is deficient. A custom must be permanent, well-settled, and widespread. *Iacovangelo v. Correctional Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (widespread practice not pled where other than the plaintiff, the pleading provides only one additional example of a similar incident); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice"); *McKeefry v. Town of Bedford,* 2019 U.S. Dist. LEXIS 207874, at *11-12 (S.D.N.Y. Dec. 2, 2019) (finding that where plaintiff provides facts only about her case, this is insufficient to show a pattern, practice, policy or custom).

Here, Plaintiff pleads no other instances where HVCC employees were subjected to the same alleged handling, no examples of any additional incidents or a pattern of similar incidents, and no facts establishing that any policymaker knew of and acquiesced in a persistent, widespread practice (Complaint ¶¶272-274). Accordingly, this claim should be dismissed.

### B.  Plaintiff's Fails to State a Legally Plausible Failure-to-Train Claim

Plaintiff's failure-to-train claim fares no better. He pleads that HVCC failed to train or supervise its decision makers in the proper handling of employee discipline, due process obligations and reputational harm (Complaint ¶261). A failure-to-train *Monell* theory is an even more tenuous route to municipal liability and requires factual allegations to show a municipality's failure to provide adequate training or supervision of its agents rises to the level of deliberate indifference. *Sulehria v. City of N.Y.*, 670 F. Supp. 2d 288, 320 (S.D.N.Y. 2009). To state a claim, a Plaintiff must plead:

> (1) that 'a policymaker [of the municipality] knows "to a moral certainty" that her employees will confront a given situation,' (2)

'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation,' and (3) 'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.' *Holden v. Port Auth. of NY & New Jersey*, 521 F. Supp. 3d 415, 427 (S.D.N.Y. 2021).

A municipality is deliberately indifferent where it fails to act when it has "actual or constructive notice," generally from "[a] pattern of similar constitutional violations by untrained employees," that its training program is "deficient." *Holden*, 521 F. Supp. 3d at 427. Here, Plaintiff does not establish deliberate indifference.

*First*, there is no pleaded pattern of similar constitutional violations that would have placed HVCC on notice of a need for different training. Plaintiff alleges only his own experience (Complaint ¶264). He identifies no pattern of improper handling of employee discipline or reputational harm (Complaint ¶261). *Second*, the Complaint does not allege facts showing that the alleged need for specialized training was so obvious that the failure to provide it would predictably lead to constitutional violations. The bare assertion that HVCC lacked a "codified framework" for executive discipline or reputational safeguards is not the same as pleading an obvious training need (Complaint ¶266). An absence of particular written protocols does not itself amount to deliberate indifference. *Third*, Plaintiff pleads no facts about the content of any training HVCC actually provided, what specific deficiencies existed, who was responsible, or how those deficiencies caused the alleged deprivations here (Complaint ¶¶263-267 (referencing deficiencies in vague and conclusory manner)). *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 536 (S.D.N.Y. 2012). General failure to train and supervise claims are "boilerplate assertions which do not 'allege a specific deficiency in the municipality's training, and thus are insufficient to state a claim for municipal liability.'" *See Rivera v. Westchester Cnty.*, 488 F. Supp. 3d 70, 78 (S.D.N.Y. 2020).

On these facts, the claim is at most a challenge to the way HVCC handled one personnel matter, not a plausible assertion of a systemic training deficiency adopted with deliberate indifference. This claim should likewise be dismissed.

### C. **Plaintiff's Section 1983 Claims Against Defendants Must be Dismissed**

Plaintiff's federal constitutional claims against HVCC depend on a viable *Monell* theory to attribute any underlying constitutional violation to the entity. *Monell*, 436 U.S. at 694. As shown, the policy and custom and failure-to-train theories are inadequately pled and wholly conclusory. Accordingly, all Section 1983 claims against HVCC should be dismissed.

Finally, a requirement of a Section 1983 claim is that it be against a person acting under color of law. 42 USCS § 1983. A Board of Trustees is not a "person" subject to suit under Section 1983. *Gaby v. Bd. of Trustees*, 348 F.3d 62, 63 (2d Cir. 2003) ("the Board of Trustees [i]s not a 'person' subject to suit under 1983"). Therefore, the only way to hold the Board liable for any underlying Section 1983 claim is to also assert *Monell* liability against the Board. Having failed to do so, all Section 1983 claims must be dismissed as against the Board of Trustees.[12]

### POINT X

### **DEFENDANT KELLEHER IS ENTITLED TO QUALIFIED IMMUNITY**

Assuming *arguendo* that Plaintiff's constitutional claims asserted under Section 1983 could otherwise survive, they must still be dismissed as against Mr. Kelleher. The strong policy considerations that underlie immunity defenses mandate that they be adjudicated at the beginning stages of the litigation. *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) ("Because qualified immunity is an immunity from suit — not merely an immunity from judgment —

---

[12] Claims against Mr. Kelleher in his "official capacity" must also be dismissed as a suit against an individual sued in his official capacity under 1983 is the equivalent of a suit against the entity. *Thompson v. City of NY*, 50 Misc 3d 1037, 1055 (Sup. Ct. Bronx Cnty 2015) (claims against individual municipal employees in their official capacities are tantamount to claims against the municipality itself. Such claims require proof of a municipal custom or policy to permit recovery, as they are functionally equivalent to actions against the municipality).

assertions of qualified immunity should be addressed as early as possible in the judicial process."). Consequently, qualified immunity defenses are properly brought on a 12(b)(6) motion. *See*, *e.g.*, *Charles W. v. Maul*, 214 F.3d 350 (2d Cir. 2000) (reversing district court's denial of motion to dismiss on qualified immunity grounds: "At the motion to dismiss stage of a civil damages action, a defendant is entitled to qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"); *Allah v. Juchenwioz*, 2004 WL 2389823 (S.D.N.Y. 2004). An individual defendant is entitled to qualified immunity because his alleged conduct in participating in the decision to terminate Plaintiff and subsequently speaking about the termination in his official capacity as Board Chair, "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

An official is entitled to qualified immunity: "(1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007); *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007). For a constitutional right to be clearly established, the contours of that right:

> … must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) *citing Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12 (1985).

No clearly established rights have been violated in this case. *First*, with respect to Plaintiff's alleged procedural due process rights, a reasonable trustee could believe that the process afforded comported with due process. *Second*, with respect to the alleged stigmatizing comments, a reasonable trustee could believe that restrained institutional messaging of the kind alleged here

31

did not require a contemporaneous name-clearing hearing. *Third*, with respect to equal protection, a reasonable trustee could believe that a board decision taken after an investigation complied with equal protection. In short, it was objectively reasonable for Mr. Kelleher to believe his actions were lawful and dismissal of Plaintiff's constitutional claims against him is proper. *See, e.g., Young v. Goord*, No. 01 CV 0626 (JG), 2005 U.S. Dist. LEXIS 3641, *8-9 (E.D.N.Y. Mar. 10, 2005) (dismissing individual defendant on 12(b)(6) motion on grounds of qualified immunity).

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' partial motion to dismiss Plaintiff's Complaint should be granted, together with such other and further relief as the Court deems just and proper.

Dated:  November 24, 2025

BOND, SCHOENECK & KING, PLLC

By:_____

    Robert F. Manfredo, Esq.
    Bar Roll No. 515487
    Kristina Wieneke, Esq.
    Bar Roll No. 705763
*Attorneys for Defendants*
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
Telephone: (518) 533-3000

22518217.v8-11/24/25