UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DR. ROGER RAMSAMMY,

                               Plaintiff,

              v.                             Civil Action No. 1:25-cv-1328 (AMN/PJE)

HUDSON VALLEY COMMUNITY COLLEGE, and BOARD OF TRUSTEES OF HUDSON VALLEY COMMUNITY COLLEGE,

                               Defendants.

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendants*
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
T: 518.533.3000
E: rmanfredo@bsk.com
   kwieneke@bsk.com

*Of Counsel:*   Robert F. Manfredo, Esq.
                     Kristina Wieneke, Esq.

22976871.v9-3/4/26

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 1

    A.   Plaintiff's Employment Agreement with HVCC ............................................................. 1

    B.   HVCC's Termination of Plaintiff ..................................................................................... 3

STANDARD OF REVIEW ................................................................................................................ 5

ARGUMENT ...................................................................................................................................... 6

POINT I ............................................................................................................................................... 6

PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE PARTIALLY
DISMISSED FOR FAILURE TO STATE A CLAIM ....................................................................... 6

POINT II ............................................................................................................................................. 8

PLAINTIFF'S REFORMATION CLAIM FAILS AS A MATTER OF LAW .................................. 8

    A.   The Reformation Claim is Time-Barred ........................................................................... 9

    B.   The Reformation Claim Fails to Establish a Mistake ......................................................11

    C.   The Reformation Claim Fails Because the Agreement Was Ratified ............................. 13

CONCLUSION ................................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1414 APF, LLC v. Deer Stags, Inc.*,
  39 A.D.3d 329 (1st Dept. 2007) ................................................................................... 10, 11

*Argonaut Ins. Co. v. City of Troy*,
  U.S. Dist. LEXIS 68664 (N.D.N.Y. Apr. 20, 2020) ............................................................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................................. 5, 6

*Beardslee v. Inflection Energy, LLC*,
  904 F. Supp. 2d 213 (N.D.N.Y. 2012) ................................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................................. 5

*Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*,
  152 F. Supp. 3d 159 (S.D.N.Y. 2016) ............................................................................... 13

*Chimart Assoc. v. Paul*,
  66 N.Y.2d 570 (1986) .......................................................................................................... 9

*Gunther v. Vilceus*,
  142 A.D.3d 639 (2d Dept. 2016) ........................................................................................ 9

*Hilgreen v. Pollard Excavating, Inc.*,
  193 A.D.3d 1134 (App. Div. 3rd Dept. 2021) .................................................................... 9

*Inv'rs Sav. Bank v. Cover*,
  187 A.D.3d 868 (App. Div. 2nd Dept. 2020) ................................................................... 10

*J.P. Morgan Sec. Inc. v. Ader*,
  127 A.D.3d 506 (1st Dept. 2015) ...................................................................................... 14

*K.I.D.E. Assocs. v. Garage Estates Co.*,
  280 A.D.2d 251 (App. Div. 1st Dept. 2001) ....................................................................... 9

*Law Debenture Tr. Co. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ................................................................................................ 8

*Lent v. Cea*,
  209 A.D.2d 820 (3d Dept. 1994) ........................................................................................ 9

*Lombardo v. Seuss Enters., L.P.*,
    2017 U.S. Dist. LEXIS 64854 (S.D.N.Y. 2017) ........................................................................6

*Lopez v. Lopez*,
    133 A.D.3d 722 (2d Dept. 2015) ............................................................................................10

*NCCMI, Inc. v. Bersin Props., LLC*,
    226 A.D.3d 88 (1st Dept. 2024) .................................................................................10, 11, 14

*NY First Ave. CVS, Inc. v. Wellington Tower Assoc., L.P.*,
    299 A.D.2d 205 (1st Dept. 2002) .............................................................................................9

*Rely-On-Us, Inc. v. Torres*,
    165 A.D.3d 719 (App. Div. 2d Dept. 2018) ...........................................................................10

*Resort Sports Network Inc. v. PH Ventures III, LLC*,
    67 A.D.3d 132 (App. Div. 1st Dept. 2009) .........................................................................8, 13

*Shults v. Geary*,
    660 N.Y.S.2d 497 (App. Div. 3rd Dept. 1997) ......................................................................12

*Sunnyview Farm, LLC v. Levy Leverage, LLC*,
    223 A.D.3d 955 (App. Div. 3rd Dept. 2024) .........................................................................11

*U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*,
    38 N.Y.3d 169 (2022) ............................................................................................................12

*In re Union Indem. Ins. Co.*,
    162 A.D.2d 398 (App. Div. 1st Dept. 1990) ............................................................................9

*Vance Metal Fabricators, Inc. v. Carl E. Widell & Son*,
    50 A.D.2d 1062 (App. Div. 4th Dept. 1975) ...........................................................................9

*Wallace v. 600 Partners Co.*,
    86 N.Y.2d 543 (1995) .............................................................................................10, 11, 13, 14

**Statutes**

CPLR 213(6) ..................................................................................................................................10

Fed. R. Civ. P. 8 ..............................................................................................................................5

Fed. R. Civ. P. 12(a)(4)A ................................................................................................................6

**PRELIMINARY STATEMENT**

Defendants Hudson Valley Community College ("HVCC" or "the College") and the HVCC Board of Trustees ("the Board") respectfully submit this memorandum of law in support of their partial motion to dismiss the February 2, 2026, Amended Complaint ("the Complaint") of Plaintiff, Dr. Roger Ramsammy ("Dr. Ramsammy" or "Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiff now asserts two (2) causes of action arising from the termination of his employment from HVCC in June 2024, breach of contract and reformation of contract. For the reasons set forth more fully below, Defendants request that the Court dismiss Plaintiff's breach of contract claim insofar as Plaintiff alleges that he was terminated "without proper notice or an opportunity to appear before the Board of Trustees." (Am. Complaint[1] ¶¶ 107-110). This argument relies on an erroneous reading of Section 4.1 of Plaintiff's employment agreement and should be dismissed as a matter of law. Defendants also request that the Court dismiss Plaintiff's contract reformation claim in its entirety as this claim is barred by the statute of limitations and, in any event, rests on conclusory allegations that warrant dismissal as a matter of law.

**STATEMENT OF FACTS**

**A. Plaintiff's Employment Agreement with HVCC**

As pled in the Complaint, Dr. Ramsammy served as President of HVCC pursuant to a written employment agreement (the "Agreement") initially commencing July 1, 2018 (Am. Complaint ¶ 1). The initial term was extended multiple times, with the most recent extension executed on or about March 30, 2024, setting an "Extended Term" through August 30, 2029 (Am.

---

[1] All references to "Am. Complaint" refer to the Amended Complaint of Dr. Roger Ramsammy.

Complaint ¶ 26).[2] Section 4.1 of the Agreement authorized HVCC to terminate Plaintiff with sixty (60) days prior written notice for "Just Cause" (Ex. A ¶ 4.1). The Agreement authorized the Board to place Plaintiff on paid Administrative Leave during the sixty-day notice period (Ex. A ¶ 4.1). The Agreement provides a non-exhaustive list of examples of conduct that would constitute "Just Cause," including:

> a) The refusal by the President to perform the employment duties reasonably required of the President as outlined in this Agreement;
> b) The President's conviction of or a guilty plea to a felony whether or not relating to or affecting the College;
> c) The President's conviction of a misdemeanor charge which directly results in a significant and detrimentally adverse affect on the College;
> d) The commission of any act of dishonesty by the President, which relates to or affects the College; and
> e) The refusal to follow, implement, or adhere to lawful procedures or directives established by the Board of Trustees of the State University of New York, the Commission of Education of the State of New York, the Board of Regents of the University of the State of New York or the Board.
> f) Any other material breach of this Agreement as defined in Section 4.2(a).

(Ex. A ¶ 4.1(a)-(f)). Section 4.1 further provided Dr. Ramsammy with an opportunity to receive notice and an opportunity to meet with the Board if the Board terminated him for Just Cause under subsections (a) (failure to perform his employment duties) or (f) (material breach):

> A termination for "Just Cause" **described in clauses (a) and (f)** in this Subsection 4.1 shall not be effective until the President has received sixty (60) days written notice of the proposed termination and the reasons therefore and has been granted, upon proper notice, the opportunity to appear before the Board, with legal counsel of his choosing and at his sole expense, to provide his arguments why the proposed termination is unwarranted and should not take place. If the Board should thereafter determine the termination is unwarranted, the College shall reimburse the President for all reasonable attorney fees, costs and expenses incurred.

---

[2] A copy of the Fourth Amended and Restated Employment Agreement is attached as Exhibit "A" to the Complaint.

2

(Ex. A ¶ 4.1) (emphasis added). As indicated by the express language in the Agreement, Dr. Ramsammy was not entitled to these additional protections if the Board terminated him for the reasons set forth in subsections (b), (c), (d), or (e) of Section 4.1. The Agreement further provided that if the President is terminated for Just Cause, he is not entitled to any salary or benefits following the effective termination date (Ex. A ¶ 4.6(a)).

In his Amended Complaint, Plaintiff now alleges that the phrase "(a) and (f)" in the final paragraph of Section 4.1 is a scrivener's error that should read "(a) through (f)," and seeks reformation of the Agreement so that the pre-termination opportunity to appear before the Board would apply to all six examples of "Just Cause" (Am. Complaint ¶¶ 28-34). As Plaintiff acknowledges, the contracting history reflects multiple iterations of the President's employment agreement dating back to 2018, including extensions and renewals culminating in the Fourth Amended and Restated Employment Agreement executed on or about March 30, 2024, with a term through August 30, 2029. As part of the initial hiring process, Plaintiff retained counsel who negotiated on his behalf with counsel for Defendants, and subsequent renewals were likewise executed following negotiations and review in consultation with attorneys. (Am. Complaint ¶¶ 19-22).

### B. HVCC's Termination of Plaintiff

Plaintiff alleges that in April 2024 he and HVCC staff attended a conference in Louisville Kentucky, with his spouse accompanying him in her personal capacity (Am. Complaint ¶¶ 41-42). He further alleges that following the trip, his executive assistant made allegations of sexual assault and harassment against him to HVCC's Director of Human Resources ("HR") (*Id.* at ¶¶ 58-59). He contends he was orally advised of the existence of the complaint made by his assistant but not

3

provided its contents (*Id*. at ¶ 60). He alleges that other officials discussed the allegations with trustees and faculty members (*Id*. at ¶62).

On May 15, 2024, the Board placed Plaintiff on paid administrative leave following receipt of the executive assistant's HR complaint and engaged a law firm to conduct an independent investigation (Am. Complaint ¶¶ 66-67). On May 17, 2024, the investigators interviewed Plaintiff and his spouse, wherein Plaintiff denied wrongdoing. (Am. Complaint ¶¶ 73-75). Plaintiff contends his attorney informed the investigators that he was aware of allegations but did not know the extent of them, that he would fully cooperate in the investigation and that he denied any wrongdoing or misconduct (Am. Complaint ¶68). Plaintiff alleges Omni Hotel video and other materials contradict his executive assistant's account of events in Louisville and support his denials (Am. Complaint ¶¶80-84). On June 14, 2024, the investigators conducted a second interview of Plaintiff surrounding the executive assistant's allegations and allegations by another HVCC female employee alleging sexual harassment against Plaintiff (Am. Complaint ¶ 86).

On June 25, 2024, the Board voted to terminate Plaintiff's employment for Just Cause under Sections 4.1(d) and (e) of the Agreement (Am. Complaint ¶¶ 90-91). On June 26, 2024, the College issued a termination letter to Plaintiff, which notified him of his termination pursuant to Sections 4.1(d) and 4.1(e) of the Agreement, and that the termination would become effective in sixty (60) days, during which time he would be placed on administrative leave (Am. Complaint ¶¶ 95-96).

The termination letter cited two grounds for Plaintiff's termination. The Board terminated Plaintiff based on Section 4.1(d), "due to the commission of acts of dishonesty related to or affecting the College," further noting, "you were not forthcoming and truthful regarding your relationship and conduct related to certain College employees under your supervision" (Am.

4

Complaint ¶¶ 96-97). The Board also terminated Plaintiff based on Section 4.1(e), noting that Plaintiff violated SUNY and College policies, including SUNY's policy on Sexual Harassment Response and Prevention and HVCC's Anti-Discrimination and Harassment Policy (*Id.*). Plaintiff alleges he was terminated without an opportunity to appear before the Board (Am. Complaint ¶ 98).

On November 25, 2024, Plaintiff served a Notice of Claim alleging breach of contract, discrimination, defamation and unidentified constitutional violations (*Id.* at ¶20). He subsequently filed an action on September 23, 2025, asserting thirteen causes of action, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, discrimination, defamation, negligent and intentional infliction of emotional distress, and various due process and equal protection claims asserted under 42 U.S.C. §1983 (hereinafter, "Section 1983"). Defendants moved to dismiss all but the "Just Cause" aspect of his breach of contract claim, prompting Plaintiff to file the instant Amended Complaint on February 2, 2026.

## STANDARD OF REVIEW

To survive a motion to dismiss a complaint under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544**,** 127 S. Ct. 1955, 1974 (2007). As the U.S. Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Most pertinent here is the Supreme Court's view that, while Rule 8 of the FRCP "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ...

*it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pled factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id*. The determination as to whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief'" as is required. *Id. quoting* Fed. R. Civ. P. 8(a)(2).

## ARGUMENT

## POINT I

### PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE PARTIALLY DISMISSED FOR FAILURE TO STATE A CLAIM

The first cause of action for breach of contract is two pronged. Plaintiff alleges that HVCC breached the Agreement by: (1) terminating Plaintiff "without proper prior notice or an opportunity to appear before the Board of Trustees" and (2) by erroneously determining "just cause" for Plaintiff's termination (Am. Complaint ¶¶107-110). Defendants move to dismiss on the first basis, as such claim fails as a matter of law.[3]

---

[3] Defendants reserve their right to respond to the remainder of the breach of contract claim in their answer, which is currently tolled under FRCP 12(a)(4)A). *Lombardo v. Seuss Enters., L.P.*, 2017 U.S. Dist. LEXIS 64854, *10 (S.D.N.Y. 2017). Defendants also expressly reserve the right to seek dismissal of the remaining aspects of Plaintiff's breach of contract claim on the basis that such claim should have been pursued as an Article 78 proceeding and is now barred by the 4-month statute of limitation for such proceedings.

6

The first prong of Plaintiff's breach of contract claim relies on Section 4.1 which states, in pertinent part:

> A termination for "Just Cause" **described in clauses (a) and (f)** in this Subsection 4.1 shall not be effective until the President has received sixty (60) days written notice of the proposed termination and the reasons therefore and has been granted, upon proper notice, the opportunity to appear before the Board, with legal counsel of his choosing and at his sole expense, to provide his arguments why the proposed termination is unwarranted and should not take place.

(Am. Complaint ¶ 103; Ex. A ¶ 4.1) (emphasis added). Plaintiff alleges that the College breached the Agreement by not providing him with an opportunity to appear before the Board and provide arguments as to why the proposed termination is unwarranted (Am. Complaint ¶¶ 107).

As explicitly stated in the Agreement, the opportunity to meet with the Board only arises if the proposed termination is based on Section 4.1(a) (the refusal of the President to perform the employment duties reasonably required of the President as outlined in the Agreement) or Section 4.1(f) (any other material breach of the Agreement as defined in Section 4.2(a)). The Board, however, expressly terminated Plaintiff pursuant to Sections 4.1(d) and 4.1(e) (*see* Am. Complaint ¶¶ 94-96). Neither of those provisions give Plaintiff a contractual right to meet with the Board prior to the termination becoming effective (*see* Ex. A ¶ 4.1). To that end, the Agreement must be interpreted and enforced based on its plain language. *Argonaut Ins. Co. v. City of Troy*, No. 1:19-CV-1247 TJM/CFH, U.S. Dist. LEXIS 68664, *17 (N.D.N.Y. Apr. 20, 2020) ([w]hen a contract "on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity"); *Beardslee v. Inflection Energy, LLC*, 904 F. Supp. 2d 213, 219 (N.D.N.Y. 2012) ("[T]he best evidence of intent is the contract itself . . .it must be enforced according to the plain meaning of its terms."). Accordingly, because the operative language of Section 4.1 is not reasonably susceptible to more than one meaning, it must be enforced by its plain meaning. *Id*. Any allegation that the Agreement's text is "ambiguous or

7

incomplete" (Am. Complaint ¶ 31) is foreclosed by the Agreement's integration clause.[4] *Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (parole evidence cannot vary or add to such a fully integrated contract). Based on the foregoing, Plaintiff's claim for breach of contract—insofar as it is premised on the alleged failure of Defendants to provide Plaintiff with an opportunity to address the Board prior to his termination—must be dismissed.

## POINT II

## PLAINTIFF'S REFORMATION CLAIM FAILS AS A MATTER OF LAW

In apparent recognition that the express language of the Agreement only permitted Plaintiff an opportunity to meet with the Board in limited circumstances, Plaintiff's Amended Complaint asserts a new claim for reformation of contract. Plaintiff requests that the Court issue an Order reforming the plain language of the Agreement to read that such an opportunity to meet with the Board applied to all the grounds for a Just Cause dismissal under Section 4.1 of the Agreement. This claim is likewise without merit.

Reformation is an extraordinary equitable remedy available only to conform a written instrument to the parties' actual agreement upon a clear-and-convincing showing of either (1) mutual mistake or (2) unilateral mistake coupled with fraud. Courts have consistently recognized that reformation is not granted to alleviate a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing memorializing that agreement materially deviates from the intent of both parties. *Resort Sports Network Inc. v. PH Ventures III, LLC*, 67 A.D.3d 132,

---

[4] *See* Agreement's relevant merger clause at Am. Complaint Ex. A ¶ 14: "Entire Agreement and Modification: This Agreement sets forth the entire agreement of the parties concerning the employment of the President by the Board and any oral or written statements, representations, agreements or understandings made or entered into prior to or contemporaneously with the execution of this Agreement are superseded by this Agreement and are hereby rescinded, revoked, and rendered null and void by the parties. Only a written instrument duly executed by each party hereto may modify this Agreement."

8

136 (App. Div. 1st Dept. 2009); *Gunther v. Vilceus*, 142 A.D.3d 639, 640 (2d Dept. 2016) (explaining that reformation is not intended as a remedy to alleviate a hard bargain).

The Court of Appeals has established that reformation may only be granted when clear and convincing evidence establishes that the parties reached an oral agreement that, without their knowledge, was not embodied in the subsequent written contract. *See Hilgreen v. Pollard Excavating, Inc.*, 193 A.D.3d 1134, 1137 (App. Div. 3rd Dept. 2021); *see also Lent v. Cea*, 209 A.D.2d 820, 820 (3d Dept. 1994) (same); *see also Vance Metal Fabricators, Inc. v. Carl E. Widell & Son*, 50 A.D.2d 1062, 1062 (App. Div. 4th Dept. 1975) (reformation requires a certainty of error).

New York imposes a "heavy presumption" that a deliberately prepared and executed instrument reflects the parties' true intent. *In re Union Indem. Ins. Co.*, 162 A.D.2d 398, 398 (App. Div. 1st Dept. 1990). That presumption is particularly strong where negotiations are conducted by sophisticated, counseled parties. *K.I.D.E. Assocs. v. Garage Estates Co.*, 280 A.D.2d 251, 253 (App. Div. 1st Dept. 2001). To overcome this presumption, the party seeking reformation must allege and ultimately prove "in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 574-75 (1986); *NY First Ave. CVS, Inc. v. Wellington Tower Assoc., L.P.,* 299 A.D.2d 205, 205 (1st Dept. 2002) (affirming dismissal where allegations showed, at most, unilateral mistake). A contract shall not be reformed on "loose, contradictory and unsatisfactory evidence." *Vance Metal Fabricators, Inc.*, 50 A.D.2d at 1062.

A. <u>The Reformation Claim is Time-Barred</u>

As a threshold and dispositive matter, Plaintiff's reformation claim is time-barred. Under New York law, a claim for reformation of a contract—including one based on an alleged

9

scrivener's error — is governed by the six-year statute of limitations set forth in CPLR 213(6), regardless of when the alleged mistake is discovered. *See* CPLR 213(6); *see also Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 547 (1995) (holding that reformation claim accrues "[a]t the time the asserted 'scrivener's error' was allegedly committed."); *1414 APF, LLC v. Deer Stags, Inc.*, 39 A.D.3d 329, 330 (1st Dept. 2007) (dismissing reformation claim as untimely where such claim were "intrinsically intertwined" with alleged scrivener's error); *Lopez v. Lopez*, 133 A.D.3d 722, 723 (2d Dept. 2015) (same); *NCCMI, Inc. v. Bersin Props., LLC*, 226 A.D.3d 88, 93-94 (1st Dept. 2024) (same).

Courts have consistently applied this accrual-at-execution rule, recognizing that the statute begins to run when the alleged mistake occurs during the drafting and execution process. *Inv'rs Sav. Bank v. Cover*, 187 A.D.3d 868, 869 (App. Div. 2nd Dept. 2020); s*ee also 1414 APF, LLC*, 39 A.D.3d at 330. This statutory framework applies uniformly to all reformation claims premised on alleged mistakes, whether characterized as mutual mistake, unilateral mistake, or scrivener's error. *See Rely-On-Us, Inc. v. Torres*, 165 A.D.3d 719, 721 (App. Div. 2d Dept. 2018).

Here, the accrual date is particularly clear because Plaintiff himself admits that the language he now disputes was drafted in 2018 (*See* Am. Complaint ¶ 19-35). Any alleged mistake necessarily occurred during that drafting process, rendering Plaintiff's reformation claim time-barred under the six-year statute of limitations. *See, e.g., Rely-On-Us, Inc*, 165 A.D.3d at 721. (holding reformation cause of action for alleged scriveners' error is governed by six-year statute of limitations which begins to run on the date the mistake is made). Moreover, Plaintiff acknowledges that the same language he contests was written in error appeared across multiple extensions and amendments, further confirming that the limitations period expired long ago (Am.

Complaint ¶19). *See Wallace*, 86 N.Y.2d at 547; *1414 APF, LLC*, 39 A.D.3d at 330; *see also NCCMI*, 226 A.D.3d at 93-94.

B.  **The Reformation Claim Fails to Establish a Mistake**

Plaintiff also fails to plausibly plead mutual or unilateral mistake under New York's stringent standard. To obtain reformation based on mutual mistake, a party must demonstrate by clear and convincing evidence that the mistake in question is mutual, substantial, material and exists at the time the contract is entered. *Sunnyview Farm, LLC v. Levy Leverage, LLC*, 223 A.D.3d 955, 960 (App. Div. 3rd Dept. 2024).

Plaintiff's claim for reformation is premised on his interpretation of certain changes that were made to a draft of the 2018 version of the Agreement. The relevant language is set forth below:

…

(f)  ~~Any other material breach of this Agreement.~~

(f)  Any other material breach of this Agreement as defined in Section 4.2(a).

A termination for "Just Cause" described in clauses (a) and (f ~~e~~) in this Subsection 4.1 shall not be effective until the President has received thirty ninety sixty (~~30~~~~90~~60) days written notice of the proposed termination and the reasons therefore and has been granted, upon proper notice, the opportunity to appear before the Board, with legal counsel of his choosing and at his sole expense, to provide his or her arguments why the proposed termination is unwarranted and should not take place.

Plaintiff contends that the 2018 draft agreement "initially listed five categories of misconduct, labeled 4.1(a) through (e)" and that subsection (f) was added later, prompting the revision to the provision regarding an opportunity to meet with the Board before termination, and evidencing an intent to cover all grounds for Just Cause in that provision. Plaintiff's argument, however, ignores the fact that the language he cites to in the Complaint shows that subsection (f)

11

was already included in the draft agreement, but was revised to include the language, "as defined in Section 4.2(a)". This change appears to have been made at the same time that the parties changed the reference from (e) to (f) in the provision at issue, undercutting Plaintiff's theory that this was somehow intended to read (a) *through* (f) instead of (a) and (f).

Simply put, Plaintiff's argument is wholly unsupported by the contract language, the drafting history or New York law. The plain text controls. "When parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 38 N.Y.3d 169, 178 (2022). Courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Id.*

A deliberate revision from one specific subsection to another demonstrates a targeted selection — not expansion. If anything, the revision history logically undercuts Plaintiff's position, as it indicates the parties were actively and narrowly negotiating which specific items would be included. Had the parties intended to cover the full sequence of Just Cause provisions, the sophisticated parties would undoubtedly have included language that made that intent clear, likely by using the word "through" instead of the word "and." New York Courts reject invitations to fill in terms based on speculation. *Id.* Plaintiff alleges no contemporaneous, specific meeting of the minds that the pre-termination appearance procedure would apply to terminations other than those under Sections 4.1(d) and (e), and identifies no concrete, mutually agreed language that differs from the executed text. Moreover, to the extent Plaintiff asserts a unilateral mistake, he fails to allege any fraud by Defendant —a required element. *Shults v. Geary*, 660 N.Y.S.2d 497 (App. Div. 3rd Dept. 1997) (for reformation based on unilateral mistake, the movant must show that the other

party deliberately misled the movant and that the subsequent writing did not express the intended agreement). Based on the foregoing, Plaintiff's reformation claim should be dismissed.

### C. The Reformation Claim Fails Because the Agreement Was Ratified

Plaintiff's reformation claim also fails because Plaintiff ratified the Agreement. Under New York law, ratification "may be express or implied, or may result from silence or inaction." *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp. 3d 159, 165 (S.D.N.Y. 2016). Acceptance of benefits may constitute ratification, and acquiescence may give rise to implied ratification. *Id*. The law presumes that counseled parties understand the terms of their agreements, particularly when they continue to perform and accept benefits. *See Wallace*, 86 N.Y.2d at 547.

Here, Plaintiff—with the assistance of counsel—negotiated and executed successive extensions and amendments while continuing to accept the Agreement's benefits (*See* Am. Complaint ¶ 19). *Wallace*, 86 N.Y.2d at 547 (denying reformation where lease was negotiated by sophisticated, counseled business people at arm's length and reviewed and revised by the parties a number of times). Presumably, each iteration of the Agreement, from the original negotiated in 2018 through the Fourth Amended and Restated Agreement in March 2024, under which Plaintiff was terminated, contained identical language in Section 4.1 that was not changed. That repeated renewal of the same language in the Agreement constitutes ratification and bars any subsequent claim for reformation.

Further, the Agreement and all subsequent Agreements were complete on their face, unambiguous and contained merger clauses.[5] *Resort Sports Network Inc.*, 67 A.D.3d at 136 (refusing to rewrite a contract that is "complete on its face, unambiguous and contains a merger clause that claims to supersede all prior agreements."). Courts have held that when a party elects

---

[5] *See* Am. Complaint Ex. B at ¶ 14 (establishing that Plaintiff's 2018 employment agreement contained an identical merger clause to the most recent iteration of the Agreement (*See* Am. Complaint Ex. A at ¶ 14).

13

to pursue damages and reformation—rather than rescission—and simultaneously declines to assert fraud as a basis for relief, its continued acceptance of the agreement's benefits and execution of amendments constitutes ratification of the contract. Such conduct "unequivocally demonstrate[s] that it has elected to affirm" the agreement. *J.P. Morgan Sec. Inc. v. Ader*, 127 A.D.3d 506, 512 (1st Dept. 2015). Once a party has ratified a clear, integrated agreement, equity will not rewrite its terms. *See NCCMI, Inc. v. Bersin Props., LLC*, 226 A.D.3d 88, 93–94 (1st Dept.2024) (declining to correct alleged scrivener's error where sophisticated parties negotiated a complete, unambiguous contract, emphasizing New York's strong policy favoring enforcement of "clear, complete writings" and guarding against post-hoc revisionism).

Plaintiff's argument ultimately amounts to an invitation for the Court to rewrite the contract and to supply terms that are not there — something courts are loathe to do absent absurdity. *See Wallace*, 86 N.Y.2d at 547. Transforming a discrete, repeatedly ratified revision into an expansive procedural right based on speculation is an impermissible leap.

In sum, the reformation cause of action should be dismissed for failure to state a claim given Plaintiff's inability to allege either mutual mistake or unilateral mistake under New York law, as well as his subsequent and repeated ratification of the Agreement.

## **CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss Plaintiff's Amended Complaint should be granted, together with such other and further relief as the Court deems just and proper.

Dated:  March 4, 2026                                          BOND, SCHOENECK & KING, PLLC

By: _____
Robert F. Manfredo, Esq.
Bar Roll No. 515487
Kristina Wieneke, Esq.
Bar Roll No. 705763
*Attorneys for Defendants*
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
Telephone: (518) 533-3000